No. 67,889

EXECUTIVE AIRCRAFT CONSULTING, INC., *Appellee,* v. THE CITY OF NEWTON, KANSAS, and THE COUNTY OF HARVEY, KANSAS, *Appellants.*

(845 P.2d 57)

Opinion filed January 22, 1993.

*Robert D. Myers,* of Robert D. Myers, P.A., of Newton, argued the cause, and *Craig D. Cox,* county counselor, was with him on the brief for appellants.

*David C. Burns,* of Speir, Stroberg, Sizemore, Burns & Gillmore, P.A., Newton, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

ABBOTT, J.: Executive Aircraft Consulting, Inc., (Executive Aircraft) filed a declaratory judgment action, challenging the legality of a "fuel flowage fee," which the City of Newton and Harvey County (defendants) had adopted by ordinance. The trial court found that this fee on all aviation fuel transported onto the premises of the Newton City-County Airport (Airport) was an illegal tax, in violation of K.S.A. 79-3424 (prohibiting any political subdivision except the State of Kansas from imposing a motor vehicle fuel tax) and K.S.A. 12-194 (prohibiting a city or county from imposing an excise tax upon the sale or transfer of personal or real property, other than a retailers' sales tax and a compensating use tax). The defendants appeal.

The defendants had and have a retail sales facility at the Airport that, among other things, sells aviation fuel to the general public. It is the only sales facility for aviation fuel at the Airport. Executive Aircraft is in the business of refurbishing aircraft and buys and sells aircraft. It operates its business at the Airport on property leased from defendants. It uses a large quantity of aviation fuel.

Executive Aircraft purchased a tanker truck and would purchase aviation fuel whenever it could buy it at the lowest price and then refuel its planes out of the tanker truck. It would also buy fuel from suppliers who would deliver fuel to the Airport and pump it into Executive Aircraft's tanker truck.

The defendants became concerned about the loss of revenue from Executive Aircraft and the possibility that other tenants might do the same thing. The defendants countered by adopting a city/county ordinance that establishes a license requirement to transport aviation fuel to and upon the Airport's premises and assesses a fuel flowage fee of five cents per gallon on all aviation fuel so transported. The ordinance establishes criminal penalties for violations. The ordinance provides for the proceeds from the fuel flowage fees to be deposited into an airport improvement fund to finance public improvements at the Airport.

Executive Aircraft filed a declaratory judgment action, asking the trial court to invalidate that part of the ordinance imposing the fuel flowage fee. Executive Aircraft argued the fuel flowage

fee is a locally levied tax on the distribution or delivery of motor vehicle fuel, in violation of K.S.A. 79-3424; is a locally levied excise tax on the sale or transfer of personal property, in violation of K.S.A. 12-194; and did not operate impartially, in violation of K.S.A. 3-116.

Executive Aircraft subsequently filed a motion for judgment on the pleadings on the tax issues—whether the fuel flowage fee violated K.S.A. 79-3424 and K.S.A. 12-194. Executive Aircraft maintained that judgment on the pleadings was not appropriate with respect to its claims concerning K.S.A. 3-116 because of the possibility of disputed facts concerning whether the ordinance discriminated against Executive Aircraft. In response, the defendants claimed that all three issues were susceptible to judgment on the pleadings.

On January 3, 1992, the trial court heard arguments and then entered judgment in favor of Executive Aircraft. With regard to the tax issues, the court ruled that the defendants did not have the authority to impose the fuel flowage fee and that the portion of the ordinance imposing the fuel flowage fee was illegal. The court did not address the K.S.A. 3-116 claim.

The defendants timely appealed to the Court of Appeals. The case was transferred to this court, pursuant to K.S.A. 20-3018(c).

The defendants claim the trial court erred in finding that the fuel flowage fee was a locally levied tax on motor vehicle fuel in violation of K.S.A. 79-3424 and a locally levied excise tax in violation of K.S.A. 12-194. The defendants argue that the fuel flowage fee does not violate the statutes because a fee, by definition, is outside the scope of the tax statutes and because this fee was issued in furtherance of its proprietary functions. The defendants conceded at trial and on appeal that but for the defendants' exercising their proprietary functions, the fuel flowage fee would be a tax.

The defendants base their authority to impose the fuel flowage fee upon the home rule provision of the Kansas Constitution. "[T]he home rule powers granted to cities by constitutional amendment and to counties by legislative act appear to be similar and parallel each other in many particulars." *Missouri Pacific Railroad v. Board of Greeley County Comm'rs*, 231 Kan. 225, 226, 643 P.2d 188 (1982). There also are differences between city

and county home rule. See Heim, Kansas Local Government Law § 3.64 (1991) (comparison of city and county home rule powers). These differences, however, are immaterial to resolving this issue. Thus, for the sake of brevity, references to constitutional home rule will be deemed to apply to both defendants.

Home rule empowers the defendants to levy any type of exaction unless the legislature preempts the field by uniform enactment. Kan. Const. art. 12, § 5(b). The defendants acknowledge that K.S.A. 79-3424 and K.S.A. 12-194 are uniform enactments.

K.S.A. 79-3424 provides:

> "The business of using, manufacturing or selling of motor-vehicle fuels shall not be subject to any excise, license, privilege or occupation tax other than the one herein imposed, whether such tax be imposed by the state of Kansas or by any municipal corporation or other political subdivision of this state; and no municipal corporation, or other political subdivision of this state, shall levy or collect any tax upon, or measured by, the sale, receipt, distribution or use of motor-vehicle fuel, or any excise, license, privilege or occupational tax upon the business of manufacturing, using, selling or delivering motor-vehicle fuels."

Motor vehicle fuels encompass aviation fuel. K.S.A. 1991 Supp. 79-3408(d)(4).

K.S.A. 12-194 provides:

> "No city or county shall levy or impose an excise tax or a tax in the nature of an excise, other than a retailers' sales tax and a compensating use tax, upon the sale or transfer of personal or real property, or the use thereof, or the rendering of a service, but the provisions of this section shall not be construed as prohibiting any city from (a) contracting with a utility for a fixed charge based upon a percentage of gross receipts derived from the service permitted by grant, right, privilege or franchise to such utility; (b) imposing an occupation tax or license fee for the privilege of engaging in any business, trade, occupation or profession, or rendering or furnishing any service, but the determination of any such license fee shall not be based upon any amount the licensee has received from the sale or transfer of personal or real property, or for the rendering or furnishing of a service, or on the income of the licensee; or (c) levying any occupation tax or license fee imposed by such city prior to the effective date of this act. No license fee described in subsection (b) of this section shall be imposed upon any utility contracting with and subject to a charge, described in subsection (a) of this section, by such city."

The defendants correctly assert that the ordinance is entitled to a presumption of validity and should not be stricken unless its infringement upon a statute is clear beyond substantial doubt.

See *City of Wichita v. Wallace*, 246 Kan. 253, 257, 788 P.2d 270 (1990); see also *Blevins v. Hiebert*, 247 Kan. 1, 16, 795 P.2d 325 (1990) ("A city or county ordinance should be permitted to stand unless an actual conflict exists between the ordinance and a statute, or unless the legislature has clearly preempted the field so as to preclude local governmental action."); *cf.* Kan. Const. art. 12, § 5(d) ("Powers and authority granted cities pursuant to this section shall be liberally construed for the purpose of giving to cities the largest measure of self-government."); *Claflin v. Walsh*, 212 Kan. 1, 7, 509 P.2d 1130 (1973) ("Section 5 *(d)* of Article 12 [of the Kansas Constitution] requires a liberal construction of the powers and authority granted cities for the purpose of giving to cities the largest measure of self-government. This provision simply means that the home rule power of cities' is favored and should be upheld unless there is a sound reason to deny it. . . . Unless there is actual conflict between a municipal ordinance and a statute, the city ordinance should be permitted to stand.").

The defendants also contend tax statutes must be construed strictly and their prohibitions restricted to the express, specific language of the statutes. This court has established the following principles in construing tax statutes:

"Tax laws are statutory and do not exist apart from the statute. As such, they must be strictly construed." *In re Order of Board of Tax Appeals*, 236 Kan. 406, Syl. ¶ 5, 691 P.2d 394 (1984), *overruled on other grounds In re Application of U.S.D. No. 437 for Tax Relief*, 243 Kan. 555, 757 P.2d 314 (1988).

"Tax statutes will not be extended by implication beyond the clear import of language employed therein, and their operation will not be enlarged so as to include matters not specifically embraced. Where there is reasonable doubt as to the meaning of a taxing act, it will be construed most favorably to the taxpayer." *Fleming Company v. McDonald*, 212 Kan. 11, Syl. ¶ 1, 509 P.2d 1162 (1973); *Equitable Life Assurance Society v. Hobbs*, 154 Kan. 1, Syl. ¶ 1, 114 P.2d 871 (1941).

Any reasonable doubt concerning the meaning of these tax statutes must be construed in favor of the taxpayer, not the municipality.

According to the defendants, because constitutional home rule expressly recognizes forms of exactions not expressly prohibited in the two tax statutes, the legislature did not intend to preempt this field for all forms of exactions. Specifically, the defendants

argue that because the fuel flowage fee is a proprietary fee, it is outside the scope of K.S.A. 79-3424 and K.S.A. 12-194, which prohibit a locally levied tax or excise, not a locally levied proprietary fee. In essence, the defendants' argument is based upon the Latin maxim *expressio unius est exclusio alterius*—"the expression of one excludes the other." See *Board of Johnson County Comm'rs v. Greenhaw*, 241 Kan. 119, 129, 734 P.2d 1125 (1987).

The fact that the fuel flowage fee has been entitled a fee is not the decisive factor in ascertaining whether the fee violates either tax statute. We must determine what the legislature intended to prohibit. In order to do that, we must examine the nature and purpose of a fee and of a tax. This court has referred to a tax as a "revenue measure." *Berger v. Bierschbach*, 201 Kan. 740, 745, 443 P.2d 186 (1968).

Other jurisdictions have addressed the distinctions between a tax and a fee. The United States Supreme Court has stated that "an 'enforced contribution to provide for the support of government,' [is] the standard definition of a tax. [Citation omitted.]" *United States v. Mississippi Tax Comm'n*, 421 U.S. 599, 606, 44 L. Ed. 2d 404, 95 S. Ct. 1872 (1975). "A fee . . . is incident to a voluntary act . . . which, presumably, bestows a benefit on the applicant, not shared by other members of society." *National Cable Television Assn. v. U.S.*, 415 U.S. 336, 340-41, 39 L. Ed. 2d 370, 94 S. Ct. 1146 (1974). The District of Columbia Court of Appeals has noted: "A 'fee' is a payment for a special privilege or service rendered, and not a revenue measure. If the 'fee' unreasonably exceeds the value of the specific services for which it is charged it will be held invalid." *National Cable Television Ass'n, Inc. v. F.C.C.*, 554 F.2d 1094, 1106 (D.C. Cir. 1976). Massachusetts has declared:

"Fees imposed by a governmental entity tend to fall into one of two principal categories: user fees, based on the rights of the entity as proprietor of the instrumentalities used, [citation omitted], or regulatory fees (including licensing and inspection fees), founded on the police power to regulate particular businesses or activities. [Citations omitted.] Such fees share common traits that distinguish them from taxes: they are charged in exchange for a particular governmental service which benefits the party paying the fee in a manner 'not shared by other members of society,' [citation omitted]; they are paid by choice, in that the party paying the fee has the option of not utilizing the governmental service and thereby avoiding the charge, [citation

omitted], and the charges are collected not to raise revenues but to compensate the governmental entity providing the services for its expenses." *Emerson College v. Boston*, 391 Mass. 415, 424-25, 462 N.E.2d 1098 (1984).

In New York,

"taxes are burdens of a pecuniary nature imposed generally upon individuals or property for defraying the cost of governmental functions, while, on the other hand, charges are sustainable as fees where they are imposed upon a person to defray or help defray the cost of particular services rendered for his account." *Matter of Hanson v. Griffiths*, 204 Misc. 736, 738, 124 N.Y.S.2d 473 (1953), *aff'd* 283 App. Div. 662, 127 N.Y.S.2d 819 (1954).

See *Mtr. of Joslin v. Regan*, 63 App. Div. 2d 466, 470, 406 N.Y.S.2d 938 (1978) ("fees have been characterized as 'a visitation of the costs of special services upon the one who derives a benefit from them.' "), *aff'd* 48 N.Y.2d 746, 422 N.Y.S.2d 662, 397 N.E.2d 1329 (1979). Kentucky has determined:

" 'The distinction between a fee and a tax is one that is not always observed with nicety in judicial decisions, but any payment exacted by the state or its municipal subdivisions as a contribution toward the cost of maintaining governmental functions, where the special benefits derived from their performance is merged in the general benefit, is a tax.' On the other hand, a fee is generally regarded as a charge for some particular service." *Dickson, Sheriff v. Jeff. Co. Bd. of Education*, 311 Ky. 781, 786, 225 S.W.2d 672 (1949).

In South Dakota, "[t]he distinction between fees and taxes is that taxes are imposed for the purpose of general revenue while license or other fees are ordinarily imposed to cover the cost and expense of supervision or regulation. [Citation omitted.]" *Valandra v. Viedt*, 259 N.W.2d 510, 512 (S.D. 1977).

Thus, a tax is a forced contribution to raise revenue for the maintenance of governmental services offered to the general public. In contrast, a fee is paid in exchange for a special service, benefit, or privilege not automatically conferred upon the general public. A fee is not a revenue measure, but a means of compensating the government for the cost of offering and regulating the special service, benefit, or privilege. Payment of a fee is voluntary—an individual can avoid the charge by choosing not to take advantage of the service, benefit, or privilege offered.

Executive Aircraft argues that the fuel flowage fee is a tax because the fuel flowage fee is not related to any special service being provided to the fuel transporters. Executive Aircraft sug-

gests the fuel transporters may live too far away to benefit from using the Airport in any other capacity. Executive Aircraft also claims the purpose of the fuel flowage fee is to raise revenue to support the Airport, which would eliminate the need to raise the mill levy.

Counsel for the defendants admitted at oral argument in the trial court that the fuel flowage fee was a "revenue raising measure." Defense counsel argued:

"[I]f we look at [it] from the point of view of the subject which would be a fuel distributor coming in here, they don't have any right or privilege to conduct their business on the airport facility, and if they want to, of course, our concern is to the extent they can do that they're in competition with the—with our own revenue producing activities, so if you're gonna do that and be in competition then you should contribute, too, to the cost. . . . If we say that we can't require the—these fuel distributors to contribute and help make up for what we're losing in revenue on the other when we aren't the ones selling the fuel . . . .

. . . .

"[The fuel distributors are] having the privilege of coming on [the Airport's premises] and doing this business. Circumventing, not illegally, but doing so in a way that competes with other revenue sources of the airport. We have the right to protect that."

The trial court found that the operation of the Airport is a proprietary function. For support, the court cited 3 McQuillin, Municipal Corporations § 11.03.05 (3d ed. 1990), in which it is stated: "The operation of an airport by a municipality . . . is generally held to be a proprietary rather than a governmental function." The defendants jointly operate the Airport.

Kansas law also supports the proposition that a municipality's operation of an airport is a proprietary function. In *Wendler v. City of Great Bend*, 181 Kan. 753, Syl. ¶ 5, 316 P.2d 265 (1957), in the context of governmental immunity from tort liability, this court held:

"A municipal airport is essentially a part of a city's system of transportation facilities and as such assumes its proper place in the general field of transportation and commerce. The various commercial transactions by a municipality in the operation of an airport from which it seeks to derive revenue are only in part indicative of its commercial character, the full significance of its commercial nature being exemplified by the desired opportunities of a municipality for increased prosperity to be secured through air commerce.

This classifies the airport with such public utilities as electric light, gas, water and transportation systems—universally classed as proprietary."

See *Hillhouse v. City of Kansas City*, 221 Kan. 369, 373, 559 P.2d 1148 (1977) (airport as proprietary function mentioned in the context of discussing why foreign municipal corporations should be treated the same as foreign private corporations; jurisdiction question raised in tort liability suit); *Parker v. City of Hutchinson*, 196 Kan. 148, 150-51, 410 P.2d 347 (1966) (airport as proprietary function discussed in context of governmental immunity from tort liability).

In its journal entry on motion for judgment on the pleadings, after acknowledging that the operation of the Airport was a proprietary function, the trial court found that "imposition of the fuel flowage fee was the exercise of legislative power." The trial court noted: "In its governmental power, the City and County may command; in its private character, it sometimes must bargain and barter." In its memorandum decision on the defendants' motion for reconsideration, the trial court indicated imposition of the fee was a governmental or legislative activity because it was noncommercial in nature and because a private individual or company could not accomplish the same. For example, failure to pay the fee results in criminal sanctions—imprisonment not exceeding 30 days and/or a fine not exceeding $500. Additionally, by imposing the fuel flowage fee, the defendants unilaterally altered its lease agreement with Executive Aircraft and accomplished an "ex parte facto rent increase" without providing a comparable increase of service.

We have acknowledged the difficulty in classifying an activity as either governmental or proprietary.

"The cases attempting to resolve this problem are legion and are replete with conflicts and inconsistencies. Moreover, when an activity partakes of both governmental and proprietary characteristics, the problem of categorizing that activity becomes even more uncertain. The end result of such conflicts and uncertainties is that 'shadowy distinctions between government functions and proprietary affairs . . . have been used to decide cases, all without much rhyme or reason. . . .' (*Wendler v. City of Great Bend*, 181 Kan. 753, 758, 316 P.2d 265.)" *Brown v. Wichita State University*, 217 Kan. 279, 305, 540 P.2d 66 (1975), *aff'd in part, vacated in part* 219 Kan. 2, 547 P.2d 1015 (1976).

See *Krantz v. City of Hutchinson, et al.*, 165 Kan. 449, 455, 196 P.2d 227 (1948). Each case must be decided on its own facts. *Carroll v. Kittle*, 203 Kan. 841, 849, 457 P.2d 21 (1969).

Both parties cite a 1989 Attorney General Opinion to support their arguments. The Attorney General was asked if a flowage fee on the per gallon sale of motor fuels, which had been imposed by municipal airport authorities as part of the rent in a lease agreement, was a local excise tax in violation of the same statutes involved in the instant case. The Attorney General concluded that the flowage fee was part of the rent, "a charge for a service rendered," and not a tax. Att'y Gen. Op. No. 89-57, p. 4.

The defendants claim the Attorney General Opinion examines the relationship between proprietary fees and taxes. According to the defendants, the opinion supports their position for the following reasons: The Attorney General noted that an airport authority is authorized statutorily to enter into contracts that lease part or all of the airport for aviation purposes; that all types of public revenue are not taxes; and that if "a city is authorized to provide a service for compensation, the charge imposed is not a tax." Att'y Gen. Op. No. 89-57, p. 3. The Attorney General concluded "the airport authority is exacting the charge in its capacity as lessor rather than by virtue of its sovereignty" and "the fact that the rent is in part determined by the gross receipt of sales of gasoline does not render the rent charged a tax on the gasoline, or the selling of the same." Att'y Gen. Op. No. 89-57, pp. 3-4.

Executive Aircraft maintains the opinion is distinguishable factually. Most importantly, in the circumstances addressed in the opinion, the fee was part of the negotiated lease agreement between the airport authority and the lessee.

The defendants contend the fact that flowage fees were incorporated into the rental agreement is a distinction without a difference. According to the defendants, the fuel flowage fee in this case serves the same function as the negotiated charge in the lease agreement addressed in the Attorney General Opinion because in both instances those assessed the fees are on the premises for business purposes. In both circumstances, without the municipality providing and maintaining the premises, there would

be no opportunity to take advantage of the business opportunities. The defendants argue that the mechanism by which the fee is exacted is not important: "A rental charge is simply another of the several types of exactions that cities have the authority and power to employ, being also separate and distinct from a 'tax.'"

The defendants' arguments are not persuasive. The factual differences are significant. The Attorney General Opinion recognized that the rental arrangements were an important factor by mentioning such when setting forth the issue: "Our question is whether the flowage fee on the sale of gasoline *charged as part of the rent* imposes an excise tax on the sale of gasoline in violation of K.S.A. 12-194 . . . and K.S.A. 79-3424." (Emphasis added.) Att'y Gen. Op. No. 89-57, p. 2.

We are cited many cases concerning airports charging fees that have been held both permissible and impermissible. Many are distinguishable because of statutory authority or statutory prohibition.

The distinction between a fee and a tax does not depend upon its label, but rather on the nature and function of the charge. Any applicable statutes must be considered in determining the validity of such a charge. The adoption of a charge for the privilege of non-aeronautical parties doing business at a publicly owned airport generally is governed by the same rules and regulations that apply to a private landowner. Thus, there must be some aspect of contract or consent; otherwise, the charge is a tax.

Here, there is a strong legislative intent to preempt local units of government from collecting revenue on the sale of motor vehicle fuel. Although a proprietor could enter into a lease to compute rent based on gallonage of fuel sold, the unilateral imposition of a fee based on gallonage transported onto the airport amounts to a tax and is thus prohibited by K.S.A. 79-3424. We are satisfied the infringement is clear beyond a substantial doubt, and the trial court was correct in so holding.

Having decided the "fuel flowage fee" is a tax prohibited by K.S.A. 79-3424, the remaining issues are moot.

Affirmed.