(921 P.2d 234)
No. 74,409

HOME BUILDERS ASSOCIATION OF GREATER KANSAS CITY, *et al.,*
*Appellees,* v. CITY OF OVERLAND PARK, KANSAS, *Appellant.*

Opinion filed July 26, 1996.

*Neil R. Shortlidge*, of Stinson, Mag & Fizzell, P.C., of Kansas City, Missouri, and *Mark D. Hinderks*, of the same firm, of Overland Park, and *Robert J. Watson*, city attorney, for appellant.

*Lewis A. Heaven, Jr., Thomas S. Busch*, and *John D. Tongier*, of Holbrook, Heaven & Fay, P.A., of Merriam, for appellees.

*Donald L. Moler, Jr.*, for *amicus curiae* League of Kansas Municipalities.

Before BRAZIL, C.J., GREEN, J., and LARRY T. SOLOMON, District Judge, assigned.

BRAZIL, C.J.: This case arises out of three ordinary ordinances and one charter ordinance enacted by the City of Overland Park (the City). Essentially, the four ordinances impose an excise tax to be paid by those who apply for plat approval and recordation in the City. The tax is $0.10 for each square foot of land included within the plat. The stated purpose of the tax is to provide funding for the construction of thoroughfare improvements within the City.

The Home Builders Association of Greater Kansas City, along with numerous developers and private landowners, filed suit seeking to declare the ordinances in violation of state and federal constitutional law and state statutory law and seeking to enjoin enforcement of the ordinances. On cross-motions for partial summary judgment, the trial court found the ordinances invalid as beyond the scope of the City's constitutional home rule authority. The City appeals.

There are no material facts in dispute in this case. In entering summary judgment, the trial court incorporated by reference the pertinent facts from the City's "MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT" and from "PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND MEMORANDUM IN SUPPORT OF PLAIN-

TIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT." The facts relied upon by the trial court stem primarily from the City's above-cited motion, are uncontroverted, and are essentially as follows.

## Parties

The Homebuilders Association of Greater Kansas City is a non-profit trade association authorized to do business in Kansas and is comprised of home builders, developers, remodelers, and business associates with the home building industry. It promotes and supports the local building industry in the 10-county Greater Kansas City metropolitan area which includes Johnson County, Kansas. Other appellees are owners and developers of various parcels of residential real estate located in Overland Park, Johnson County, Kansas. Appellees will be collectively referred to as HBA.

The City is a duly organized municipal corporation located in Johnson County, Kansas.

## Background

A typical thoroughfare in the City consists of 56 feet of pavement width covering four traffic lanes, with the opposite direction traffic lanes usually separated by a 24-foot landscaped median with left-turn lanes at major intersections. From September 29, 1976, the date the City's Ordinance No. ZRR-901 became effective, to October 7, 1994, the date the City's Ordinance No. ZRR-1886 became effective, the City financed thoroughfare improvements in part by requiring, at the time of and as a condition to platting, that anyone seeking to plat property help pay the cost of the improvement by contributing to an escrow account an amount of money (or provide a letter of credit to pay the money one year later) for each lineal front foot of property abutting on the unimproved thoroughfare and by dedicating right-of-way for the thoroughfare, as previously set forth in §§ 18.460.340 and 18.460.230 of the Overland Park Municipal Code (or the predecessors of those sections).

Prior to October 7, 1994, § 18.460.340 of the Overland Park Municipal Code required subdividers abutting unimproved thoroughfares to escrow funds based upon the City's estimate of one-half of the cost of constructing a 36-foot wide collector street. The

City's rationale for this amount was that, in addition to serving the purpose of moving through traffic from one part of the City to another, a thoroughfare also functions as a collector street for properties and subdivisions abutting the thoroughfare.

In May 1990, the city engineer estimated the cost to improve one-half of a street to 36-foot wide collector street standards was $90 per abutting lineal front foot, exclusive of right-of-way acquisition costs. As of the first quarter of 1994, based upon the actual cost of three recent thoroughfare improvements, the engineer estimated the cost to improve one-half of a street to 36-foot wide collector street standards was $117.28 per abutting lineal front foot, exclusive of right-of-way acquisition costs.

In addition to these escrow charges and right-of-way dedication requirements to persons platting property, the City relied on the General Improvement and Assessment Law, K.S.A. 12-6a01 *et seq.*, as an alternative means to help finance thoroughfare improvements for unplatted property. Under this statutory scheme, cities are authorized to finance improvements through the creation of improvement districts and the imposition of special assessments on property abutting or near the thoroughfare to be improved. Additional costs of thoroughfare improvements not paid from escrow charges or special assessments were paid by the City from other sources of revenue.

The City's policy for financing thoroughfare improvements, as just described, was ruled unlawful in *Landau Investment Co., Inc., et al. v. City of Overland Park*, Johnson County District Court Case No. 93C-12128. Upon appeal, our Supreme Court dismissed the case for lack of a final decision. *Landau Investment Co. v. City of Overland Park*, No. 71,979, unpublished Supreme Court opinion filed April 21, 1995.

## The Relevant Ordinances

On August 1, 1994, in response to the *Landau* case, the City passed Ordinance No. EX-1880 (Ord. EX-1880), which levies an excise tax on the privilege of engaging in the business of platting real property in the City. Ord. EX-1880 became effective on October 10, 1994.

The rate of $0.10 per square foot levied by Ord. EX-1880 was calculated so as to raise equivalent amounts of revenue as were raised from the combination of the $90 per abutting lineal front foot that, prior to October 7, 1994, was required to be escrowed by § 18.460.340 of the Overland Park Municipal Code, and the cost to the City of acquiring right-of-way that, prior to October 7, 1994, was required to be dedicated by § 18.460.230 of the Overland Park Municipal Code.

The rate of $0.10 per square foot levied by Ord. EX-1880 was derived as follows. The $90 per abutting lineal foot was mathematically converted into an amount per square foot within a section of land, which resulted in a figure of $0.07058 per square foot. In addition, the amount of $0.02353 was calculated to represent a portion of the estimated cost to the City of acquiring the right-of-way necessary to improve streets designated as thoroughfares on the City's Official Street Map to thoroughfare standards. The total ($0.09411) was rounded up to $0.10 in order to pay for part of the cost to the City of relocating utilities within the right-of way.

On October 12, 1994, the City passed Ordinance No. REB-1882 (Ord. REB-1882), which rebates excise taxes paid pursuant to Ord. EX-1880 if an individual would have paid less under the prior escrow financing system. Ord. REB-1882 became effective on October 14, 1994.

On August 1, 1994, the City passed Charter Ordinance No. 64 (Ch. Ord. 64), which exempts the City from application of K.S.A. 12-194 and gives it authority to create an excise tax on platting and grant an equitable credit. The apparent purpose of Ch. Ord. 64 is to provide alternate home rule authority (*i.e.*, as an alternative to Ord. EX-1880) for the City's excise tax scheme. Ch. Ord. 64 became effective on October 10, 1994.

On October 12, 1994, the City passed Ordinance No. EX-1885 (Ord. EX-1885), which levies an excise tax on the act of platting real property in the City (as opposed to a tax on the privilege of engaging in the business of platting real property as provided in Ord. EX-1880). Ord. EX-1885 was enacted under the authority of Ch. Ord. 64 and became effective on December 21, 1994.

On October 3, 1994, the City enacted Ordinance No. ZRR-1886, which, *inter alia*, amended §§ 18.460.230 and 18.460.340 of the Overland Park Municipal Code to repeal the requirements of right-of-way contributions and escrow payments for thoroughfare improvements. Ordinance No. ZRR-1886 became effective on October 7, 1994.

Anticipating the passage of Ord. EX-1880, Ord. REB-1882, Ch. Ord. 64, and Ord. EX-1885, HBA filed the complaint on February 22, 1994, before those four ordinances were enacted. HBA's Second Amended Petition, filed after those four ordinances were enacted, contained the following four counts.

Count I alleged the City's imposition of private developer fees and/or improvement district special assessments to help pay for the cost of improvements to designated main trafficways and thoroughfares (done through § 18.460.340 of the Overland Park Municipal Code) violated state statutory law. Count I sought a declaratory judgment.

Count II sought to enjoin the City from imposing fees, assessments, taxes, "or utilitizing any other means" requiring developers or other private landowners to pay the cost of improvements to designated main trafficways or thoroughfares. HBA requested a court order requiring that all such costs be paid by the City solely from at-large sources. Count II also sought to enjoin the City from levying an excise tax on the platting or use of real property.

Count III sought a refund of escrowed developer fees paid, or a release of developers' letters of credit posted, under the City's previous funding scheme.

Count IV sought a judgment declaring Ord. EX-1880, Ord. REB-1882, Ch. Ord. 64, and Ord. EX-1885, invalid as violative of the City's home rule authority and state and federal constitutional takings and substantive due process law.

The City filed a motion for partial summary judgment on counts II and IV of the petition. Specifically, the City sought a court order declaring that Ord. EX-1880, Ord. REB-1882, Ch. Ord. 64, and Ord. EX-1885 were each valid and enforceable. Subsequently, HBA filed a motion for partial summary judgment on counts II and IV as well. In a comprehensive memorandum decision, the

trial court granted HBA's motions for partial summary judgment, finding all four of the City's ordinances invalid as beyond the City's home rule powers under the Kansas Constitution.

Because the trial court granted HBA's request for injunctive relief on counts II and IV of its second amended petition, this court has jurisdiction under K.S.A. 60-2102(a)(2).

## Standard of Review

This is an appeal from a grant of partial summary judgment. "Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Kerns v. G.A.C., Inc.*, 255 Kan. 264, 268, 875 P.2d 949 (1994). Simply put, "[s]ummary judgment is proper where the only question or questions presented are questions of law." *Fletcher v. Nelson*, 253 Kan. 389, 391, 855 P.2d 940 (1993). The trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. Upon review, this court applies the same test. See *Bacon v. Mercy Hosp. of Ft. Scott*, 243 Kan. 303, 306, 756 P.2d 416 (1988).

Further references to this court's standard of review will be noted as required by the individual issues.

## Home Rule Power in General

As did the trial court, it is helpful to first set out some general principles regarding the home rule power for Kansas cities.

The home rule amendment, Kan. Const. art. 12, § 5, grants cities the power to determine their local affairs and government. Under the amendment, adopted by the people in the general election of 1960 and effective July 1, 1961, "'[n]o longer are cities dependent upon the state legislature for their authority to determine their local affairs and government. Since home rule, cities have power granted directly from the people through the constitution without ·statutory authorization.'" *McCarthy v. City of Leawood*, 257 Kan. 566, ·570, 894 P.2d 836 (1995) (quoting *Claflin v. Walsh*, 212 Kan. 1, 6, 509 P.2d 1130 [1973]). In addition, the powers and authority

granted to cities pursuant to the home rule amendment "shall be liberally construed for the purpose of giving to cities the largest measure of self-government." Kan. Const. art. 12, § 5(d).

There are two methods by which cities may exercise their home rule authority. First, cities may enact ordinances without authority from specific enabling legislation. Kan. Const. art. 12, § 5(b). Second, cities may exempt themselves from certain state legislation through charter ordinances. Kan. Const. art. 12, § 5(c).

Drawing from the express language of Kan. Const. art. 12, § 5(b), the Supreme Court in *Claflin* stated the general limitations on home rule authority:

"The home rule power is subject to optional control by legislative action in four specific areas:
(1) Enactments of statewide concern which are applicable uniformly to all cities.
(2) Other enactments of the legislature applicable uniformly to all cities.
(3) Enactments applicable uniformly to all cities of the same class limiting or prohibiting the levying of any tax, excise, fee, charge or other exaction.
(4) Enactments of the legislature prescribing limits of indebtedness." 212 Kan. at 7.

### Ord. EX-1880 and K.S.A. 12-194

First, the City contends the trial court erred in finding K.S.A. 12-194 prohibits the City from imposing an excise tax on the privilege of engaging in the business of platting real property as set forth in Ord. EX-1880. Specifically, the City asserts that K.S.A. 12-194 does not act as a limitation upon the City's home rule authority to tax under Kan. Const art. 12, § 5(b).

K.S.A. 12-194 provides:

*"No city or county shall levy or impose an excise tax or a tax in the nature of an excise, other than a retailers' sales tax and a compensating use tax, upon the sale or transfer of personal or real property, or the use thereof, or the rendering of a service, but the provisions of this section shall not be construed as prohibiting any city from* (a) contracting with a utility for a fixed charge based upon a percentage of gross receipts derived from the service permitted by grant, right, privilege or franchise to such utility; (b) *imposing an occupation tax or license fee for the privilege of engaging in any business, trade, occupation or profession, or rendering or furnishing any service,* but the determination of any such license fee shall not be based upon any amount the licensee has received from the sale or transfer of personal or real property, or for the rendering or furnishing of a service, or on the income of the licensee; or (c) levying any occupation tax or license fee

imposed by such city prior to the effective date of this act. No license fee described in subsection (b) of this section shall be imposed upon any utility contracting with and subject to a charge, described in subsection (a) of this section, by such city." (Emphasis added.)

The City offers alternative arguments to support its contention that K.S.A. 12-194 does not prohibit the tax on platting which is embodied·in Ord. EX-1880. First, the City argues the incidence of the excise tax imposed by Ord. EX-1880 is not upon the sale, transfer, or use of real property. Second, the City argues that, even if Ord. EX-1880 is considered a tax on the sale, transfer, or use of real property, the tax falls within the exemption in K.S.A. 12-194(b) for occupational or business taxes. In both of these arguments, the City is addressing the essential question of whether the tax levied by Ord. EX-1880 is in conflict with the proscription on certain taxes contained in K.S.A. 12-194.

A. Sale, transfer, or use of real property

The City asserts the trial court erred in ruling K.S.A. 12-194 prohibits the excise tax levied in Ord. EX-1880. Specifically, the City argues the business of platting real property does not fall within the proscription of K.S.A. 12-194 because it does not fall within the scope of a sale, transfer, or use of real property.

In *McCarthy*, 257 Kan. at 569, the Supreme Court reiterated the principle of Kansas home rule law that "'[a] city ordinance should be permitted to stand unless an actual conflict exists between the ordinance and a statute, or unless the legislature has clearly preempted the field so as to preclude municipal action.'" (Quoting *Moore v. City of Lawrence*, 232 Kan. 353, Syl. ¶ 4, 654 P.2d 445 [1982].) "A test frequently used to determine whether conflict in terms exists is whether the ordinance permits or licenses that which the statute forbids or prohibits that which the statute authorizes; if so, there is conflict . . . ." *City of Junction City v. Lee*, 216 Kan. 495, 501, 532 P.2d 1292 (1975).

In addition, in cases involving the legality of an ordinance under home rule authority, "the ordinance is entitled to a presumption of validity and should not be stricken unless its infringement upon a statute is clear beyond substantial doubt." *Executive Aircraft*

*Consulting, Inc. v. City of Newton*, 252 Kan. 421, 424, 845 P.2d 57 (1993). This presumption flows from the liberal construction requirement in Kan. Const. art. 12, § 5(d). See 252 Kan. at 425.

The question, therefore, is whether K.S.A. 12-194 prohibits an excise tax on the privilege of engaging in the business of platting real property, as levied by Ord. EX-1880. Because statutory interpretation is a question of law, this court's standard of review is unlimited. See *State v. Donlay*, 253 Kan. 132, 133-34, 853 P.2d 680 (1993).

The City argues the tax in the present case does not fall on the "use" of real property because it is not tied to the type of activity for which the property is being employed. The City cites *Elwell v. Stewart*, 110 Kan. 218, 219, 203 Pac. 922 (1922), where the court stated:

"'As a general rule the use of a thing does not mean the thing itself, but means that the user is to enjoy, hold, occupy, or have in some manner the benefit thereof. *If the thing to be used is in the form or shape of real estate, the use thereof is its occupancy or cultivation, etc., or the rent which can be obtained for its use.'*" (Emphasis added.)

Invoking the ruling of the trial court, HBA contends that the tax in Ord. EX-1880 is, in fact, one upon the use of real property. In so ruling, the trial court noted the legal significance of platting under Kansas statutory and case law. The trial court then concluded, without further reasoning, that "the business of platting is encompassed by 'the sale or transfer of . . . real property, or the use thereof.' " HBA expounds on the court's conclusion by adding that the act of platting is "integral to the use of the land in question," and that the usage of land "goes far beyond its physical occupation or cultivation."

HBA and the trial court describe the use of property too broadly. It is not clear how platting can be considered integral to the "use" of property, as that term is commonly understood, when a plat is not tied to the employment, occupation, or enjoyment of the land itself. As argued by the City, simply recording a plat does not give rise to any particular use then or in the future. The trial court erred in finding the tax levied by Ord. EX-1880 is one upon the use of real property.

The City also asserts that K.S.A. 12-194 does not proscribe the tax levied by Ord. EX-1880 because there is no transactional relationship between the tax and anything that could be considered a sale, transfer, or use of real property. Consistent with the trial court's conclusion, HBA argues the tax is imposed on a transactional basis simply because the ordinance requires the excise tax to be levied at the time the plat is recorded. Both parties cite *Callaway v. City of Overland Park*, 211 Kan. 646, 654-55, 508 P.2d 902 (1973), for support.

In *Callaway*, the Supreme Court addressed the validity of a city ordinance which imposed a tax on numerous business pursuits. The ordinance imposed an annual tax "on practically all retail, wholesale, manufacturing, sales, professional, banking, loan and service firms" in Overland Park. 211 Kan. at 647. One of the sections of the ordinance imposed such an annual tax on the business of leasing rental properties in Overland Park. Several individuals and firms who either owned or leased rental property challenged the ordinance, and the trial court upheld the ordinance as valid.

On appeal, the parties agreed with the trial court's finding that the ordinance was enacted by the city for revenue purposes. 211 Kan. at 648. The appellants argued the ordinance violated K.S.A. 1971 Supp. 79-4424(a), which read: "'No city shall impose an excise tax or tax in the nature of an excise, upon a sale or transfer of personal or real property, or the use thereof, or the rendering of a service.'" 211 Kan. at 651. (K.S.A. 1971 Supp. 79-4424[a] is a predecessor to what is currently embodied in K.S.A. 12-194.) In particular, the court addressed the issue of whether the tax on leasing rental property was one "'upon a sale or transfer of personal or real property, or the use thereof, or the rendering of a service.'" 211 Kan. at 651.

The *Callaway* court described the type of tax prohibited by K.S.A. 1971 Supp. 79-4424 as one that is imposed on a "transactional basis." See 211 Kan. at 654. The court defined a tax on a transactional basis to be one "upon each sale, transfer or use of real property or upon each rendition of service by a licensee or taxpayer." 211 Kan. at 655. In affirming the trial court, the *Calla-*

*way* court noted that the tax at issue in that case was not due on a transactional basis:

"The tax imposed, .0035 dollars per square foot of living space subject to being rented or leased, is an annual government exaction. It is not due on a transactional basis for it is paid only once a year whether the properties are rented or vacant and whether the same property is rented one or more times during a year." 211 Kan. at 651.

The City argues the tax in the present case likewise is not imposed on a transactional basis because the tax is triggered by the recording of the plat, not the sale, transfer, or use of the property. HBA does not address this particular argument in its brief.

*Callaway* lends support to the City's argument that the tax in the present case is also not one that is imposed on a transactional basis. The tax in the present case does not arise "upon each sale, transfer or use of real property" in Overland Park. See 211 Kan. at 655. Rather, as the City urges, the tax is levied but once no matter how often the property is subsequently transferred, sold, or used.

We agree with the City and conclude that the trial court erred in finding that the tax was imposed on a transactional basis because the tax is levied on each plat that is recorded.

## B. K.S.A. 12-194(b)

Alternatively, the City argues the tax levied by Ord. EX-1880 constitutes a business or occupation tax which is exempted from the prohibition of K.S.A. 12-194. The trial court found the ordinance did not impose an occupational tax but rather a tax upon a service, and that the tax upon this service was imposed on a transactional basis.

The trial court stated:

"In its first sentence, K.S.A. 12-194 prohibits excise taxes on the rendering of a service; however, in (b) the legislature provided that the prohibition did not extend to occupational taxes or licenses. '[I]t is the duty of the court, as far as practicable, to reconcile the different provisions [of an act] so as to make them consistent, harmonious, and sensible.' *Todd v. Kelly*, 251 Kan. 512, 516, 837 P.2d 381 (1992). The consistent interpretation is that the legislature did not intend to approve of an excise tax on a service which is provided by those engaging in a

particular independent occupation. For example, K.S.A. 12-194 prohibits an excise tax on the ordering of shoes, a service provided by a retail shoe store.

"Following this interpretation, the court holds that the City has failed to prove that platting is an independent occupation. Rather, platting is a service provided by a real estate developer to its customers as a part of its real estate development. Platting is among several services provided by the developer. Therefore, the tax on the service of platting is prohibited by K.S.A. 12-194. This Court will not construe this statute as validating a tax on what is essentially a service within a larger vocation."

While we agree with the trial court that "platting" in this context, *i.e.*, as done by developers, is not a business, we are not persuaded that Ord. EX-1880 taxes a service. The trial court noted that platting is a service within the larger occupation of a developer and, moreover, by requiring a tax to be paid prior to the recordation of every approved plat, the tax is transactional because it is imposed "upon each rendition of service by a licensee or taxpayer." *Callaway*, 211 Kan. at 655.

We fail to see how developers or owners of land who plat their own property can be said to be rendering a service to anyone but themselves. Arguably, the act of platting one's property is a step that will often result in enhancing the value of property. In that sense it is no more of a rendition of a service than a homeowner who repairs or renovates his or her home for resale.

The trial court was correct, however, in finding that "platting" is not a business under K.S.A. 12-194(b).

In summary, the excise tax under Ord. EX-1880 is not prohibited under K.S.A. 12-194. Since it is not prohibited, K.S.A. 12-194(b) is not relevant, and Ord. EX-1880 is a valid ordinance under the home rule powers of the City.

## Ord. REB-1882

The trial court found Ord. REB-1882 invalid based upon the invalidity of Ord. EX-1880. We reverse based on our holding that Ord. EX-1880 is valid.

## Ch. Ord. 64

Apparently acting from an abundance of caution, the City also enacted Ch. Ord. 64 to exempt itself from K.S.A. 12-194. Ch. Ord. 64 gave the City the authority to enact Ord. EX-1885 which is, in

substance, the same as Ord. EX-1880. (Ord. EX-1885 refers to the "act" of platting rather than the "business" of platting used in Ord. EX-1880). The trial court held that Ch. Ord. 64 is invalid because it purports to exempt the City from a statute that is applicable uniformly to all cities in Kansas or that is applicable uniformly to all cities in Kansas of the same class, the legislature having created not more than four classes.

Kan. Const. art. 12, § 5(c)(1) states:

"Any city may by charter ordinance elect in the manner prescribed in this section that the whole or any part of any enactment of the legislature applying to such city, other than enactments of statewide concern applicable uniformly to all cities, other enactments applicable uniformly to all cities, and enactments prescribing limits of indebtedness, shall not apply to such city."

The City points out that Kan. Const. art. § 5(c)(1) does not expressly contain the limitation upon home rule power found in Kan. Const. art. § 5(b) relating to tax-type enactments. Specifically, Kan. Const. art. § 5(b) permits cities to impose any tax, excise, fee, charge, or other exaction

"except when and as the levying of any tax, excise, fee, charge or other exaction is limited or prohibited by enactment of the legislature applicable uniformly to all cities of the same class: *Provided*, That the legislature may establish not to exceed four classes of cities for the purpose of imposing all such limitations or prohibitions."

Both parties, as well as the League of Kansas Municipalities (League), assume in their briefs that this limitation on home rule power applies to charter ordinances as well. This assumption appears valid in light of the recent case of *City of Wichita v. Kansas Taxpayers Network, Inc.*, 255 Kan. 534, 537-38, 874 P.2d 667 (1994), where the Supreme Court itself seemed to assume that this limitation applies to charter ordinances. See Clark, *State Control of Local Government in Kansas: Special Legislation and Home Rule*, 20 Kan. L. Rev. 631, 657 (1972). In our view, the distinction is not determinative of the issue before us. Thus, we too will assume, without deciding, that the limitation upon the taxing authority of cities expressly applicable to ordinary ordinances in Kan. Const. art. § 5(b) applies to charter ordinances as well.

As the trial court found, K.S.A. 12-194, on its face, applies uniformly to all cities. If the analysis were to stop there, then Ch. Ord. 64 would be invalid under the plain language of Kan. Const. art. 12, § 5(c)(1). Our Supreme Court held in *City of Junction City v. Griffin*, 227 Kan. 332, 335-37, 607 P.2d 459 (1980), however, that the question of uniformity goes to the entirety of the enactment in question, and that if any statute within the enactment is nonuniform then the entire enactment is considered nonuniform.

The City, therefore, contends (1) K.S.A. 12-194 is part of a larger enactment and (2) another statute within this larger enactment either creates more than four classes of cities for purposes of limiting or prohibiting the home rule taxing power of cities or treats cities within four classes nonuniformly. If the City is correct, then Ch. Ord. 64 would be a valid use of home rule authority. The trial court rejected this contention by the City.

The questions raised are questions of statutory interpretation which carry an unlimited scope of review.

1. Is K.S.A. 12-194 a stand-alone provision or part of a larger enactment?

The trial court found that, although numerically part of the statutory provisions concerning countywide and city retailers' sales taxes beginning at K.S.A. 12-187 (which will be referred to as "the local retailers' sales tax enactment"), K.S.A. 12-194 was not in substance part of that enactment because it deals with excise taxes rather than sales taxes. The court then construed K.S.A. 12-194 *in pari materia* with K.S.A. 12-188, which also concerns excise taxes. The court found that K.S.A. 12-194 applies uniformly to all four classes of cities within K.S.A. 12-188 and concluded that, therefore, the City lacked authority to use a charter amendment to exempt itself from K.S.A. 12-194.

Our Supreme Court in *Claflin v. Walsh*, 212 Kan. 1, 7-8, 509 P.2d 1130 (1973), provided guidance for courts to use to determine whether an enactment is uniform for home rule purposes:

"In view of the liberal construction provision of [Kan. Const. art. § 5(d)], in determining whether a legislative enactment is applicable uniformly to all cities

such a legislative intent should be clearly evident before the courts should deny a city the right to exercise home rule power in that area.

. . . .

". . . In order to ascertain the legislative intent, courts are not permitted to consider only a certain isolated part or parts of an act but are required to consider and construe together all parts thereof *in pari materia*. When the interpretation of some one section of an act according to the exact and literal import of its words would contravene the manifest purpose of the legislature, the entire act should be construed according to its spirit and reason, disregarding so far as may be necessary the strict letter of the law. [Citation omitted.] In addition, to be *in pari materia* statutes need not have been enacted at the same time. Statutes relating to the same subject, although enacted at different times, are *in pari materia* and should be construed together. [Citation omitted.]

"*These rules of construction require us to consider all statutes relating to the same subject together in determining legislative intent. We should follow these rules in determining whether the legislature intended to have a statute applied 'uniformly to all cities.'* " (Emphasis added.)

The City contends K.S.A. 12-194 is part of the local retailers' sales tax enactment. The League weighs in in support of the City's analysis.

HBA rejects the City's contention through an analysis of the legislative history of what is now K.S.A. 12-194. According to HBA's reasoning, K.S.A. 12-194 stands on its own as part of the General Provisions of Chapter 12, Article 1 of the Kansas statutes.

The trial court noted *Executive Aircraft Consulting, Inc. v. City of Newton*, 252 Kan. 421, 424, 845 P.2d 57 (1993), where, in discussing home rule authority, the court stated: "The defendants acknowledge that K.S.A. 79-3424 and K.S.A. 12-194 are uniform enactments." K.S.A. 12-194 formed no part of the *Executive Aircraft* court's ultimate holding, however, and so the court's statement concerning the uniformity of K.S.A. 12-194 lies in dicta. Moreover, even if the court's statement is considered binding, the City's contention on this issue revolves around a 1992 amendment to K.S.A. 12-187 (one of the statutes within the local retailers' sales tax enactment) for its authority that the enactment is nonuniform. The 1992 amendment was subsequent to the litigation in *Executive Aircraft*.

Where the City and the League part company with HBA and the trial court is over the question of whether K.S.A. 12-194 is

considered part of the local retailers' sales tax enactment. If it is, then HBA seems to concede that K.S.A. 12-194 would be considered nonuniform by virtue of K.S.A. 1992 Supp. 12-187.

A review of the parties' respective analyses shows that the current K.S.A. 12-194 has had a long and confusing legislative history. However, what seems more pertinent to the issue at hand is the enactment of K.S.A. 12-194 in its current form. K.S.A. 12-194 was enacted in 1978 as "New Sec. 8" of H.B. 3039. The preamble to the bill states:

"An Act relating to taxation; concerning retailers' sales taxes; concerning the imposition of sales taxes by cities and counties; providing for the adoption and approval thereof; providing for the administration and collection thereof and the distribution and use of the proceeds therefrom; providing for the refund of state retail sales taxes upon food to certain resident individuals . . . ." L. 1978, ch. 56, § 8.

The issue boils down to whether K.S.A. 12-194 concerns the same subject matter as the rest of the local retailers' sales tax enactment. See *Claflin*, 212 Kan. at 8 (finding that rules of statutory construction "require us to consider all statutes relating to the same subject together in determining legislative intent").

K.S.A. 12-194 certainly relates to taxation in general. See preamble to H.B. 3039. And contrary to HBA's arguments and the trial court's findings, K.S.A. 12-194 relates to retailers' sales taxation. After a retailers' sales tax is described in K.S.A. 12-187 *et seq.*, K.S.A. 12-194 then states that a local retailers' sales tax and a compensating use tax (see K.S.A. 12-198) are the only excise taxes which a city or county may impose. K.S.A. 12-194 goes on to describe certain taxes which are, in effect, exempt from the proscription dictated in the first 51 words of the statute. Although HBA is correct when it asserts an excise tax is a broader concept than a retailers' sales tax, it does not follow that K.S.A. 12-194 does not closely concern the subject of retailers' sales taxation.

In *Griffin*, the Supreme Court considered the question of which individual statutes are considered part of a broader enactment:

"In order to preserve the uniformity of the [Kansas Code of Procedure for Municipal Courts] it has been urged that [K.S.A. 12-4105] be declared no part of the enactment of the procedural code. However, this section is one of the sections

included in L. 1973, ch. 61. It is clearly one of the sections comprising the enactment. The division into chapter, article and sections in the Kansas Statutes Annotated does not have the effect of making separate enactments of a single bill passed by the legislature of the State of Kansas." 227 Kan. at 335-36.

See also *City of Wichita v. Kansas Taxpayers Network, Inc.*, 255 Kan. 534 (following *Griffin* and finding that the Kansas Water Pollution Act is nonuniform because one provision of the enactment is nonuniform); see *State ex rel. Schneider v. City of Kansas City*, 228 Kan. 25, 31, 612 P.2d 578 (1980).

Here, K.S.A. 12-194 is one of the sections included in L. 1978, ch. 56. In addition, contrary to HBA's fears of lumping together provisions of a bill which clearly involve unrelated matters, K.S.A. 12-194 generally relates to the same subject matter as the rest of the taxation statutes at K.S.A. 12-187 et *seq.*, as shown above. In fact, HBA even argues in its brief that K.S.A. 12-194 provides the authorization for the other statutes at K.S.A. 12-187 *et seq.*, which specifically concern a local retailers' sales tax. Given that position, it is unclear how HBA can maintain that K.S.A. 12-194 is completely unrelated to the other statutes within the enactment.

The trial court's analysis seems to collapse upon itself on this issue. The trial court posits that K.S.A. 12-194 is not part of the retailers' sales tax enactment because it concerns excise taxes as opposed to retailers' sales taxes. The court then groups K.S.A. 12-194 with K.S.A. 12-188 because K.S.A. 12-188 also mentions excise taxes. The court then notes that K.S.A. 12-188 also deals with retailers' sales taxes and is, therefore, broader than K.S.A. 12-194. Apparently, however, the trial court would consider K.S.A. 12-188 as part of the larger enactment because it also concerns retailers' sales taxes. The question is: How can K.S.A. 12-188 be part of two different enactments? The answer is that it cannot. There is only one enactment of which K.S.A. 12-194 is part.

The trial court erred in finding K.S.A. 12-194 is not part of the local retailers' sales tax enactment at K.S.A. 12-187 *et seq.*

2. Does the local retailers' sales tax enactment (of which K.S.A. 12-194 is part) create more than four classes of cities or treat cities nonuniformly?

The City argues the local retailers' sales tax enactment was rendered subject to the charter ordinance home rule authority of cities by virtue of the 1992 amendment to K.S.A. 12-187. The League presents a similar argument in its brief. HBA does not address this particular issue in its brief.

K.S.A. 1995 Supp. 12-188 contains four classes of cities established by the legislature

"for the purpose of imposing limitations and prohibitions upon the levying of sales and excise taxes or taxes in the nature of an excise upon sales or transfers of real property or the use thereof, or the rendering or furnishing of services by cities as authorized and provided by article 12, section 5, of the constitution of the state of Kansas."

K.S.A. 1995 Supp. 12-189 goes on to describe the different retailers' sales tax rates applicable to the four classes of cities described in K.S.A. 1995 Supp. 12-188.

If the limitation upon home rule power found in Kan. Const. art. § 5(b) tax-type enactments does not apply to charter ordinances, then the local retailers' sales tax enactment is a nonuniform enactment simply by virtue of the express language of K.S.A. 1995 Supp. 12-188 and K.S.A. 1995 Supp. 12-189.

However, even if the limitation upon home rule authority for tax-type enactments also applies to charter ordinances, K.S.A. 1995 Supp. 12-187(a)(2) provides:

"*The governing body of any city located in any county which does not impose a countywide retailers' sales tax pursuant to paragraph (5) of subsection (b) may submit the question of imposing a retailers' sales tax at the rate of .25%, .5%, .75% or 1% and pledging the revenue received therefrom for the purpose of financing the provision of health care services, as enumerated in the question, to the electors at an election called and held thereon. The tax imposed pursuant to this paragraph shall be deemed to be in addition to the rate limitations prescribed in K.S.A. 12-189, and amendments thereto.* As used in this paragraph, health care services shall include but not be limited to the following: Local health departments, city, county or district hospitals, city or county nursing homes, preventive health care services including immunizations, prenatal care and the postponement of entry into nursing homes by home health care services, mental health services, indigent health*

care, physician or health care worker recruitment, health education, emergency medical services, rural health clinics, integration of health care services, home health services and rural health networks." (Emphasis added.)

This subsection to K.S.A. 12-187 was added by the legislature in 1992. L. 1992, ch. 279, § 1.

As the City and the League point out, K.S.A. 1995 Supp. 12-187(a)(2) has the effect of treating cities within the four classes of K.S.A. 1995 Supp. 12-188 nonuniformly depending upon whether the county in which a particular city sits has enacted the retailers' sales tax in K.S.A. 1995 Supp. 12-187(b)(5). Take, for instance, a class B city under K.S.A. 1995 Supp. 12-188. According to K.S.A. 1995 Supp. 12-189, "the rate of any class B city retailers' sales tax shall be fixed in the amount of .25%, .5%, .75%, 1%, 1.25%, 1.5%, 1.75% or 2%." However, class B cities sitting in a county which has not enacted a countywide retailers' sales tax pursuant to K.S.A. 1995 Supp. 12-188(b)(5) may submit the question of an additional retailers' sales tax to their electors. K.S.A. 1995 Supp. 12-187(a)(2). Thus, it appears the legislature, pursuant to the 1992 amendment to K.S.A. 12-187(a), is treating cities of the same class within the local retailers' sales tax enactment nonuniformly. By treating cities within the same class nonuniformly, the legislature has opened up the local retailers' sales tax enactment to home rule authority.

Under either analysis, the trial court erred in finding Ch. Ord. 64 and Ord. EX-1885 were an invalid use of the City's home rule authority.

### K.S.A. 1978 Supp. 12-194 and the
### STANDARD INDUSTRIAL CLASSIFICATION MANUAL

The City contends the trial court erred in failing to take judicial notice of the 1978 supplement to K.S.A. 12-194 and of the *Standard Industrial Classification Manual*, a publication issued by the Executive Office of Management and Budget.

The City has provided nothing in the record to suggest the trial court failed or refused to take judicial notice of these documents. Thus, the City has failed to affirmatively show prejudicial error by the trial court. See *Hesston Corp. v. Kansas Employment Security Bd. of Review*, 235 Kan. 716, 724, 684 P.2d 388 (1984).

## Issues Not Resolved By The Trial Court

The remaining issues all require statutory interpretation and, therefore, this court's scope of review is unlimited for these issues.

### A. K.S.A. 19-1201 *et seq.* and K.S.A. 28-115

HBA contends that K.S.A. 19-1201 *et seq.* (setting forth the duties and powers of the register of deeds) and K.S.A. 28-115 (stating, *inter alia*, the fee which the register of deeds for each county shall charge for recording town plats) prohibit the City's excise tax for the recording of approved plats. Specifically, HBA argues the only fee which can be charged for the recording of plats is the one authorized by K.S.A. 28-115. We disagree.

As the City points out, K.S.A. 28-115 does not attempt to specifically preempt the field of charges upon plat recordation. Thus, the excise tax is valid unless it conflicts with the fee charged by K.S.A. 28-115. *Johnson County Water Dist. No. 1 v. City of Kansas City*, 255 Kan. 183, 193-94, 871 P.2d 1256 (1994). The excise tax imposed by the City does not conflict with the fee in K.S.A. 28-115 but, rather, is in addition to the fee which K.S.A. 28-115 requires. Thus, the excise tax is not prohibited by K.S.A. 19-1201 *et seq.* and K.S.A. 28-115. See *McCarthy v. City of Leawood*, 257 Kan. at 577-78.

### B. K.S.A. 12-741 *et seq.* and substantive due process law

HBA contends the City's "excise tax ordinances foist a condition on plat approval that is neither contemplated nor condoned by K.S.A. 12-741 *et seq.*" However, as the City points out, HBA fails to show how the excise tax conflicts with any of the provisions contained in K.S.A. 12-741 *et seq.*

HBA also contends the excise tax amounts to a denial of substantive due process, citing *Walz v. Town of Smithtown*, 46 F.3d 162 (2d Cir. 1995). It is unclear how *Walz* advances HBA's argument, however. As HBA itself points out in its brief, the *Walz* court held that landowners had a property interest in the grant of an application for an excavation permit where there was a strong likelihood that the application would be granted. 43 F.3d at 168. The *Walz* court further held the landowners had a substantive due process right "not to be compelled to convey some of their land in order

to obtain utility service." 43 F.3d at 169. It is unclear how *Walz* supports HBA's assertion that it has a substantive due process right in not having to pay a tax prior to plat approval and recordation.

## C. Excise tax/regulatory fee

HBA contends the excise tax is a disguised regulatory fee that violates substantive due process and constitutes an unlawful taking under the United States and Kansas Constitutions. The City responds that the excise tax was enacted as a revenue measure rather than for regulatory purposes.

HBA cites the following test from *Hillis Homes, Inc. v. Snohomish County*, 97 Wash. 804, 809, 650 P.2d 193 (1982):

"Not all demands made by a governmental body are taxes. We have pointed out that 'if the primary purpose of legislation is regulation rather than raising revenue, the legislation cannot be classified as a tax even if a burden or charge is imposed.' [Citation omitted.] The characterization of the development fees will, therefore, turn on a determination of the primary purpose of the fees. If the fees are merely tools in the regulation of land subdivision, they are not taxes. If, on the other hand, the primary purpose of the fees is to raise money, the fees are not regulatory, but fiscal, and they are taxes."

Our own Supreme Court has expressed the distinction between a tax and a fee as follows:

"Thus, a tax is a forced contribution to raise revenue for the maintenance of governmental services offered to the general public. In contrast, a fee is paid in exchange for a special service, benefit, or privilege not automatically conferred upon the general public. A fee is not a revenue measure, but a means of compensating the government for the cost of offering and regulating the special service, benefit, or privilege. Payment of a fee is voluntary—an individual can avoid the charge by choosing not to take advantage of the service, benefit, or privilege offered." *Executive Aircraft Consulting, Inc. v. City of Newton*, 252 Kan. at 427.

The stated purpose of Ord. EX-1880 is "the raising of general revenues to be used for general City projects or General Fund operations as approved by the Governing Body during adoption of the City's annual budget." The stated purpose of Ord. EX-1885 is "raising general revenues pledged to the improvement of thoroughfares in the City." Despite these stated purposes, HBA asserts "that the primary purpose of the ordinance is to regulate devel-

opment by assuring the provision of adequate public facilities (*i.e.*, improved thoroughfares) to serve new developments."

HBA argues the legislative history of the ordinances supports a finding that the primary purpose of the excise tax "was to replace the regulatory fees (escrow payments) previously charged by the City to developers seeking plat approval of land abutting unimproved thoroughfares." This argument, however, is premised on the fact that the previous funding scheme was regulatory in nature. HBA provides no support for this assumption.

HBA further argues that, even if the primary purpose of the excise tax is not regulatory, certain tests must be met for a tax measure that is characterized as being partially regulatory. Once again, however, HBA seems to assume that the excise tax is partially regulatory, while providing no legal authority for such a characterization.

### D. Equal Protection under the United States and Kansas Constitutions

Finally, HBA contends the City has singled out land developers to pay a fee disguised as an excise tax to finance the construction of main thoroughfares in the City.

The parties agree that the standard to be applied here in determining whether the City's excise tax violates the federal and state guarantees of equal protection is whether the differential treatment of taxing those engaged in the act of recording approved plats bears a rational relationship to a legitimate governmental purpose.

The rational basis test contains two substantive limitations on legislative choice: legislative enactments must implicate legitimate goals, and the means chosen by the legislature must bear a rational relationship to those goals. These limitations amount to a requirement that all persons similarly situated should be treated alike. *U.S.D. No. 229 v. State*, 256 Kan. 232, 260, 885 P.2d 1170 (1994).

HBA cites *Duff v. Garden City*, 122 Kan. 390, 251 Pac. 1091 (1926). In *Duff*, the court invalidated a city ordinance which levied a charge upon the business of selling oil and gas. The court found the charge to be, in substantial part, a license fee as opposed to an occupation tax. *Duff* is difficult to apply to the present case because

it arose prior to passage of home rule authority. In addition, the *Duff* court found the charge there to be regulatory, at least in part, based upon its effect of prohibiting small businesses in the oil and gas field. 122 Kan. at 393. HBA has made no showing that the excise tax in the present case has a disparate effect on a certain class of developers.

HBA also cites *Christopher Lake Development Co. v. St. Louis City*, 35 F.3d 1269 (8th Cir. 1994). In that case, the court merely remanded to the district court for a determination of whether certain developers had been singled out to subsidize a drainage system for an entire watershed area. The court did not determine whether the complaining developers actually had been singled out.

Here, there is a rational relationship between the tax imposed and the City's legitimate goal of raising revenue to provide for streets and services. In addition, there is no claim in the present case that certain developers have been singled out for the excise tax to the exclusion of other developers. Such a situation was clearly the concern in *Christopher Lake Development Co.*, 35 F.3d at 1274. The excise tax meets the rational basis test and, therefore, does not violate HBA's right to equal protection of the law.

Reversed and remanded for further proceedings on the remaining counts of HBA's second amended petition.