No. 55,252

R. W. COOK, *Appellant*, v. CITY OF ENTERPRISE, KANSAS, *Appellee*.

(666 P.2d 1197)

Opinion filed July 26, 1983.

*Robert C. Johnson*, of Herington, was on the brief for appellant.

*Stan Martin*, of Martin, Hoffman & McNish, of Abilene, was on the brief for appellee.

The opinion of the court was delivered by

MILLER, J.: This is an injunction action filed by the plaintiff, R. W. Cook, against the defendant, City of Enterprise, Kansas, challenging the validity of one of the city's ordinances. The facts were stipulated. The District Court of Dickinson County denied plaintiff's motion for summary judgment, determined the issues adversely to the plaintiff, and entered judgment denying him the relief sought. Plaintiff appeals.

Plaintiff is the owner of certain real estate within the city limits of Enterprise, a city of the third class in Dickinson County, Kansas. Plaintiff rented one of his lots to a Mrs. Branham, and she placed a mobile home thereon. Mrs. Branham later rented the home to a Mrs. Benson. Mrs. Benson paid rent for the mobile home to Mrs. Branham, and rent for the land to the plaintiff. Mrs.

Benson ultimately moved, leaving several unpaid utility bills from the City of Enterprise for electrical service.

The City of Enterprise operates its own electrical distribution system. In 1980, the City adopted Ordinance No. 1020, which was published once in *The Chapman Advertiser and Enterprise Journal* on December 24, 1980. The ordinance reads:

"ORDINANCE NO. 1020

"AN ORDINANCE PROVIDING FOR THE PAYMENT OF ALL CHARGES FOR ELECTRIC AND WATER-SEWAGE UTILITY SERVICES BY THE OWNERS OF PROPERTY TO WHICH SAID WATER AND ELECTRIC AND SEWAGE SERVICES ARE PROVIDED, WHETHER WITHIN OR WITHOUT THE CITY LIMITS, AND ALSO PROVIDING FOR LIABILITY FOR SAID CHARGES BY THOSE USING SAID UTILITIES.

"Be it Ordained by the Governing Body of the City of Enterprise, Kansas:

"Section 1. All owners of real estate property within or without the City of Enterprise, Kansas, to which is supplied electric and-or water and sewage service services are hereafter liable to the City of Enterprise, Kansas, for the charges for providing such city electric, water and sewage services.

"Section 2. Said liability for said charges is concurrent with any person or persons residing upon said real property and who is deemed to be the actual user of said service.

"Section 3. In the event such service charge or charges for the use of said water and sewage disposal system and electrical system be not paid within the time and in the manner as by the ordinance of this city provided, the city clerk shall certify to the county clerk of Dickinson County the legal description of the real property enjoying the said use of said sewage disposal system, and water system and electric service, together with the amount of such charge or charges shall remain unpaid and to be placed on the tax rolls for collection, subject to the same penalties and collected in like manner as other taxes are by law collectible and shall become a lien upon the real property so served.

"Section 4. All ordinances or parts of ordinances in conflict herewith are hereby repealed, preserving however all other provisions of ordinances in connection with assessments, billings and control of service by the city utility departments affected.

"Section 5. This ordinance shall take effect upon its publication in the official city newspaper."

In July, 1981, the City advised plaintiff of Mrs. Benson's unpaid utility bills and requested payment; plaintiff did not pay and the City then certified the amounts of the unpaid bills, together with a description of the real property, to the county clerk in order that the charges should become a lien upon the real estate pursuant to Ordinance No. 1020. Plaintiff brought this action in an effort to have the ordinance declared invalid.

Plaintiff first argues that the ordinance was not lawfully promulgated. K.S.A. 12-1651 states the qualifications for official

city newspapers for cities of the second and third class. There is no question but that *The Chapman Advertiser and Enterprise Journal* meets the basic qualifications set forth in that statute. K.S.A. 12-1651a also deals with official city newspapers. It states:

"At the first meeting of the newly elected city governing body it shall designate a newspaper to be the official city newspaper for the ensuing year. The official city newspaper shall thereafter be designated annually."

*The Enterprise Journal* was designated by resolution as the official newspaper of the City of Enterprise from 1959 through 1971. Thereafter, no resolution designating the official city newspaper was adopted. *The Chapman Advertiser* and *The Enterprise Journal* merged sometime, but the record does not make it clear exactly when that occurred. At any rate, according to the Enterprise City Clerk, every ordinance requiring publication from 1959 to the publication of Ordinance No. 1020 was published in *The Enterprise Journal* or its merged successor, *The Chapman Advertiser and Enterprise Journal.*

Plaintiff contends that because the *Advertiser-Journal* was not designated by ordinance in 1980 as the official city newspaper, Ordinance No. 1020 was not lawfully promulgated. He bases this argument on Article 12, Section 5(b), the Home Rule amendment of the Kansas Constitution, which provides in part that:

"Cities are hereby empowered to determine their local affairs and government . . . . Cities shall exercise such determination *by ordinance* passed by the governing body." (Emphasis added.)

Plaintiff overlooks another provision of Section 5(b), which provides that:

"All enactments relating to cities now in effect . . . shall govern cities except as cities shall exempt themselves by charter ordinances . . . ."

K.S.A. 12-1651a was enacted by the legislature in 1959, and has not since been amended or repealed. It was in full force and effect at the time the Home Rule amendment was adopted in 1960. The statute does not require designation of an official city paper by ordinance; it does not state how designation is to be effected. We read the statute as directory rather than mandatory. Here, where the City officially designated the newspaper as its official city newspaper and then continued to utilize it for local publication of its ordinances over a period of many years, the

purpose of the statutes requiring publication of ordinances, and of K.S.A. 12-1651a requiring designation of an official city newspaper, are fully accomplished. Plaintiff's argument is not persuasive. We hold that *The Chapman Advertiser and Enterprise Journal* was sufficiently designated as the official city newspaper, and the ordinance was properly published therein.

Plaintiff next argues that Ordinance No. 1020 was not properly promulgated because K.S.A. 12-137 requires *two* publications. That statute provides in substance that when a city, under the Home Rule amendment, by ordinance proposes to levy for revenue purposes any tax, excise, fee, charge or other exaction, such ordinance shall be published once each week for two consecutive weeks in the official city newspaper. That statute, however, applies only to the efforts by a city to levy taxes or other exactions for revenue purposes. Utility rates and the collection thereof are not within the purview of K.S.A. 12-137; that statute applies only to tax and tax-like measures. The lien created by the ordinance under attack is not a revenue measure, and the lien in question does not arise from the Home Rule power. The trial court correctly concluded that the statute is not applicable here.

Finally, plaintiff argues that the imposition of a lien upon his property without prior notice to the landlord that the tenant is not paying his or her utility bills constitutes a taking without due process. The general rule as to liens arising for nonpayment of municipal utility bills is stated in 12 McQuillin, Municipal Corporations § 35.38 (3d ed. rev. 1970) as follows:

> "The general rule is that water rates or rents are not a lien on the property served unless it is so provided by statute or otherwise, in express, unambiguous terms. But in some jurisdictions, by statute or otherwise, water rents, where unpaid, are a lien on the property, even for water used by a tenant or former occupant, and such legislation has been upheld as constitutional."

This rule is equally applicable to rates charged by a municipality for electrical service. See also Annot., Electricity, Gas or Water Charges, 19 A.L.R.3d 1227 and 64 Am. Jur. 2d, Public Utilities § 61.

Plaintiff's due process arguments are answered and refuted by the decision of the United States Supreme Court in the case of *Dunbar v. City of New York*, 251 U.S. 516, 64 L.Ed. 384, 40 S.Ct. 250 (1920). In that case a landlord attacked a lien created by the charter of the City of New York against the landlord's property

for water consumed by a tenant. The court held that the land-lord's property is not being taken without due process within the meaning of the Fourteenth Amendment; that it could reasonably be implied that the landlord consented to the use of water by the tenant and had knowledge of the law and the provisions of the city charter. In like manner, we hold that it is not arbitrary or a denial of due process to require a landlord to pay for utility services which ultimately benefit his property, even though the primary obligation to pay for those services is upon the tenant. As the *Dunbar* court observed:

"A city without water would be a desolate place and if plaintiff's property was in such situation it would partake of the desolation. And as a supply of water is necessary it is only an ordinary and legal exertion of government to provide means for its compulsory compensation." 251 U.S. at 518.

That statement, in modern day context, is equally applicable to municipally furnished electrical service.

The judgment is affirmed.