Stephen C. Ryan, President Kansas State Board of Mortuary Arts 700 S.W. Jackson, Suite 904 Topeka, Kansas 66603-3733
Dear Mr. Ryan:
As President of the Kansas State Board of Mortuary Arts you ask whether coroners may charge a fee for issuing a coroner's permit to cremate. As you point out, K.S.A. 2001 Supp. 65-2426a provides:
 "No dead body, as such term is defined in subsection (4) of K.S.A. 65-2401, and amendments thereto, shall be cremated unless a coroner's permit to cremate has been furnished to authorize such cremation. . . . Any person who knowingly violates this section, upon conviction, shall be fined not more than $500."
According to the District Coroner for Sedgwick County, the purpose of this statute is to ensure that a body is not cremated before an official determination that a body is no longer needed for evidence in a civil or criminal matter, that an autopsy is not needed for medical or other reasons, and that the deceased's identity has been confirmed.
Neither this statute, nor any other statute, addresses a fee in relation to the issuance of such coroner's cremation permit.
The operation of crematories is regulated by the Kansas State Board of Mortuary Arts.[1] In order to lawfully operate a crematory, the crematory must be licensed[2] and operate in compliance with specific statutes and regulations.[3] One of these statutes prohibits the cremation of "any dead human body until [the crematory operator in charge] has received . . . a completed and executed coroner's permit to cremate."[4]
The Sedgwick County District Coroner's office, which imposes a $35 cremation permit fee, explains that "the fee for cremation approval is related to the necessity of reviewing medical records and/or contacting attending physicians concerning medical histories and the diagnoses listed on the death certificate" and that it is assessed to help offset costs "for additional clerical, investigator, and physician time in issuing cremation approval in a timely manner." The district coroner asserts that the fee is "a consequence of the family electing to dispose of the remains by cremation rather than by other means."[5]
The Sedgwick County Counselor's office describes the process used by the district coroner in determining whether a cremation permit is appropriate:
 "The process begins with a review of the death certificate prepared by a private physician. In approximately 100 cases per year, the death certificate is incomplete or has been improperly completed, requiring a County medical investigator to subpoena all the medical records of the deceased, which must then be thoroughly reviewed. Any time the death was from other than natural causes, the death certificate requires further information that must be gathered and ascertained by the Coroner's staff. Finally, in those cases, the Coroner must actually rewrite the death certificate herself before she can issue a permit.
 "Average cases require approximately 15 minutes of staff time and 10 minutes of physician time. On the 100 `problem' cases described above, staff usually spend two hours preparing the file for the Coroner's review.
 "Excluding costs for supplies or overhead, the costs for the Coroner and staff time for processing each permit actually exceed the amount of the fee."[6]
A district coroner is appointed by county commissioners[7] and "receives an annual salary fixed" by county commissioners.[8] Deputy coroners, appointed by the district coroner, also receive a salary as determined by county commissioners.[9] District coroners and deputy district coroners also may receive travel expenses or a car allowance and other statutorily authorized fees and expenses that are "paid by each of the counties in the judicial district in the proportion that the population of each such county bears to the total population of the judicial district."[10] Although created by statute, for financial purposes the office of district coroner is clearly a county, as opposed to a state, office.
Counties have been granted the authority to tax and raise other revenue by virtue of "home rule" power.
 "Where the board of county commissioners of any county by resolution proposes to levy for revenue purposes any tax, excise, fee, charge or other exaction other than permit fees or license fees for regulatory purposes, a procedure for the levy of which is not otherwise prescribed by enactment of the legislature, such resolution shall require a two-thirds (2/3) vote of the members of the board and shall be published once each week for two (2) consecutive weeks in the official county newspaper."[11]
Thus, in order to raise money for "revenue purposes," a county commission must either follow any applicable statute or, in the absence of such a statute, pass a resolution, following the specific publication requirements and, if warranted, the specific referendum requirements set forth in K.S.A. 19-117. However, a county commission is not so constrained in establishing charges for "permit fees or license fees for regulatory purposes." If a fee is of this latter type, in the absence of a legislatively established fee, that is part of a uniform enactment, a board of county commissioners may establish such permit fees or license fees by a resolution pursuant to its home rule power as set forth in K.S.A. 2001 Supp. 19-101a.[12]
The first issue is whether a cremation permit fee is considered a tax
for revenue purposes or a fee for regulatory purposes. The basic difference between a tax and a fee has been explained as follows:
 "Thus, a tax is a forced contribution to raise revenue for the maintenance of governmental services offered to the general public. In contrast, a fee is paid in exchange for a special service, benefit, or privilege not automatically conferred upon the general public. A fee is not a revenue measure, but a means of compensating the government for the cost of offering and regulating the special service, benefit, or privilege. Payment of a fee is voluntary-an individual can avoid the charge by choosing not to take advantage of the service, benefit, or privilege offered."[13]
Based on this explanation and the information provided by Sedgwick County, a cremation permit fee appears to be in the nature of a fee and not a tax. However, our inquiry does not end here, as we must further determine whether a cremation permit fee is being charged for regulatorypurposes.
The term "license fee" (or "permit fee") is "usually applied to charges for regulation, restriction, and control. A regulation charge is one exacted for a privilege or as a condition precedent to the carrying on of the business and is an exercise of the police power."[14]
As further explained in a widely respected legal treatise:
 "There is a noted distinction between a license fee imposed under the police power for the purpose of regulation and a tax imposed under the taxing power for revenue. A license fee or tax under the police power is a fee only as will legitimately assist in regulation and will not exceed the necessary or probable expense of issuing the license and of inspecting and regulating the business or other subject that it covers."[15]
 "A license tax . . . is a burden imposed for the right to exercise a franchise or privilege, which can be withheld or forbidden altogether, and the sum charged is merely the amount to be paid for the exercise of the privilege. . . . [A] license confers a benefit or privilege to a party to do something, which, if done without it, would be illegal."[16]
The requirement to obtain a coroner's permit authorizing cremation regulates, restricts and controls the permissibility of cremation. The burden of paying a fee for such a permit is imposed on individuals who choose to exercise the privilege of cremation and not on the general public for an automatically conferred special service, benefit, or privilege. A coroner's permit confers this privilege, without which cremation would be illegal. The legislative enactment of a criminal penalty for anyone who cremates a dead body without a coroner's permit evidences an exercise of police power for public health, safety and welfare. Finally, assuming the fee for a coroner's permit to cremate is not an amount that exceeds the necessary or probable expenses for processing, the fee facilitates and finances the process necessary to determine whether to issue such permits. For these reasons, in our opinion, a fee for a coroner's permit to cremate serves a regulatory purpose.
Summarizing, in the absence of a uniform statute imposing a fee for a permit to cremate, a board of county commissioner may use its home rule power to impose such a fee. Because this fee is for regulatory purposes, the requirements of K.S.A. 19-117 do not apply.
Very truly yours,
 CARLA J. STOVALL Attorney General of Kansas
 Camille Nohe Assistant Attorney General
CJS:JLM:CN:jm
[1] K.S.A. 2001 Supp. 65-1760 through 65-1768.
[2] K.S.A. 2001 Supp. 65-1761(a).
[3] K.S.A. 2001 Supp. 65-1762; 65-1763; 65-1766; K.A.R. 63-7-1
through 63-7-8.
[4] K.S.A. 2001 Supp. 65-1762(b)(2).
[5] January 14, 2002 letter from Sedgwick County District Coroner to regional funeral directors.
[6] June 6, 2002 letter from Jennifer Magana, Assistant County Counselor, Sedgwick County Counselor's Office.
[7] By "the county commissioners of a single-county judicial district or the county commissioners of the county with the largest population in multiple-county judicial districts." K.S.A. 22a-226(c).
[8] By "the county commissioners of a single-county judicial district or the county commissioners of the county with the largest population in multiple-county judicial districts." K.S.A. 22a-227.
[9] By "the county commissioners of a single-county judicial district or the county commissioners of the county with the largest population in multiple-county judicial districts." K.S.A. 22a-228(a).
[10] K.S.A. 22a-228(c).
[11] K.S.A. 19-117(a) (emphasis added).
[12] See Cook v. City of Enterprise, 233 Kan. 1039 (1983), in which the Court, in addressing K.S.A. 12-137, a comparable statute that is applicable to cities, held, "[t]hat statute, however, applies only to the efforts by a city to levy taxes or other exactions for revenue purposes. Utility rates and the collection thereof are not within the purview of K.S.A. 12-137; that statute applies only to tax and tax-like measures. The lien created by the ordinance under attack is not a revenue measure, and the lien in question does not arise from the Home Rule power. The trial court correctly concluded that the [publication requirement of that] statute is not applicable here."
[13] Home Builders Ass'n of Greater Kansas City v. City of OverlandPark, 22 Kan. App. 2d 649 (1996), quoting Executive Aircraft Consulting,Inc. v. City of Newton, 252 Kan. 421, 427 (1993).
[14] Matheny v. City of Hutchinson, 154 Kan. 682, 686 (1942), quotingDuff v. Garden City, 122 Kan. 390, 392 (1927).
[15] McQuillan, Mun. Corp. § 26.15 (3rd Ed).
[16] McQuillan, Mun. Corp. § 26.18 (3rd Ed).