No. 95,445

MICHAEL A. FARHA, individually and on behalf of a class of all other similarly situated individuals, *Appellants*, v. CITY OF WICHITA, *Appellee*.

(161 P.3d 717)

Opinion filed July 13, 2007.

*Robert W. Coykendall*, of Morris, Laing, Evans, Brock & Kennedy, Chartered, of Wichita, argued the cause, and *Tim J. Moore* and *Ryan M. Peck*, of the same firm, and *Stephen W. Brown*, of Megaffin, Brown & Lynch, Chtd., of Pratt, were with him on the briefs for appellants.

*Jay C. Hinkel*, assistant city attorney, argued the cause, and *Gary E. Rebenstorf*, city attorney, and *Sharon L. Dickgrafe*, assistant city attorney, were with him on the brief for appellee.

*Sandra Jacquot*, general counsel, and *Donald L. Moler, Jr.*, executive director, were on the brief for *amicus curiae* League of Kansas Municipalities.

*Robert J. Watson*, city attorney, *Neil R. Shortlidge*, of Stinson Morrison Hecker, LLP, of Overland Park, and *Kathryn P. Peters*, of Kutak Rock, LLP, of Kansas City, Missouri, were on the brief for *amicus curiae* City of Overland Park, Kansas.

The opinion of the court was delivered by

BEIER, J.: In this appeal from a district court summary judgment in favor of defendant City of Wichita, the plaintiff class claims the City exceeded limitations on home rule power by assessing and collecting court costs in municipal cases.

Plaintiff class representative Michael A. Farha pursued this action as a result of his October 2001 conviction of inattentive driving in Wichita municipal court. He was fined $100 and assessed court costs of $73. He paid both and did not appeal. However, 3 months later, Farha filed this action on behalf of himself and others similarly situated, *i.e.*, those who, "since January 16, 1999, have paid or, to the date of trial, may have been required to pay court costs

as established in Wichita Ordinance No. 43-563, excepting those who previously have proceeded against the City of Wichita as class members."

On cross-motions for summary judgment in the district court, the plaintiff class argued that the City had exceeded its authority under the Home Rule Amendment to the Kansas Constitution; that it could not exempt itself from K.S.A. 12-4112, which prohibited municipal court costs and was uniformly applicable to all cities in the same class; that amendments to K.S.A. 12-4112 had effectively repealed the City's charter ordinance authorizing the court costs; that the charter ordinance was fatally flawed because it did not contain substitute and additional provisions required by the Home Rule Amendment; and that, even if the imposition of costs was constitutionally permitted, the passage of an ordinary rather than a charter ordinance to set the schedule of costs violated K.S.A. 12-137.

The City argued that plaintiff class members' claims were barred by res judicata and that the petition constituted an impermissible collateral attack on their convictions and sentences; that declaratory relief would be an inappropriate remedy because the issues should have been raised on appeal from the municipal court judgments; that the charter ordinance was a valid exercise of the City's constitutional home rule power; and that K.S.A. 12-137 was inapplicable or, if applicable, consistent with the City's actions. The City also took issue with the adequacy of its presuit notice of the claim under K.S.A. 12-105b.

The parties present many, but not all, of the same arguments in this appeal. In addition, we have reviewed briefs from two *amici*, the Kansas League of Municipalities and the City of Overland Park, who reinforce the City of Wichita's legal position.

In essence, the plaintiff class advances several alternative theories to overturn the district court's summary judgment: (1) The Home Rule Amendment of Article 12, § 5, of the Kansas Constitution, does not permit the City to exempt itself from K.S.A. 12-4112 of the Kansas Code of Procedure for Municipal Courts (KC-PMC); (2) even if opt-out of K.S.A. 12-4112 is permissible, the City's Charter Ordinance 122, purporting to exempt the City from

the statute, is void because it failed to include substitute and additional provisions, as required by Article 12, § 5(c)(2) of the Kansas Constitution; (3) even if opt-out is permissible and the City followed proper procedure to effect it, Charter Ordinance 122 was implicitly repealed by subsequent amendments to K.S.A. 12-4112; or (4) even if opt-out is permissible and the City followed proper procedures and amendments to K.S.A. 12-4112 did not repeal the charter ordinance, the City's ordinary ordinance amending its code to set a schedule of municipal court costs is void, because it did not comply with K.S.A. 12-137.

We address each alternative theory in turn.

*Standard of Review*

Our standard for reviewing a district court's grant or denial of summary judgment is well established.

" ' "Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case. On appeal, we apply the same rules and where we find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied." [Citations omitted.]' " *Scott v. Hughes*, 281 Kan. 642, 644, 132 P.3d 889 (2006); *State ex rel. Stovall v. Reliance Ins. Co.*, 278 Kan. 777, 788, 107 P.3d 1219 (2005).

The parties agree that there is no genuine issue of material fact for trial in this case. The dispositive questions are purely legal—involving the interplay of the Home Rule Amendment to the Kansas Constitution, two statutes, and two Wichita ordinances. Our review is therefore unlimited. See *Scott*, 281 Kan. at 644; *Rose v. Via Christi Health System, Inc.*, 279 Kan. 523, 526, 113 P.3d 241 (2005).

*Was the City Permitted to Opt Out of K.S.A. 12-4112?*

Analysis of this issue must begin with examination of the Home Rule Amendment, which took effect in 1961. Kan. Const. art. 12,

§ 5(e). Now labeled Article 12, Section 5 of the Kansas Constitution, the Amendment ensures that Kansas cities have the power to determine local public policy and regulation. Kan. Const. art. 12, § 5(b); *Kansas City Renaissance Festival Corp. v. City of Bonner Springs*, 269 Kan. 670, 673, 8 P.3d 701 (2000). It reads in pertinent part:

"(b) Cities are hereby empowered to determine their local affairs and government including the levying of taxes, excises, fees, charges and other exactions except when and as the levying of any tax, excise, fee, charge or other exaction is limited or prohibited by enactment of the legislature applicable uniformly to all cities of the same class: *Provided,* That the legislature may establish not to exceed four classes of cities for the purpose of imposing all such limitations or prohibitions. Cities shall exercise such determination by ordinance passed by the governing body with referendums only in such cases as prescribed by the legislature, subject only to enactments of the legislature of statewide concern applicable uniformly to all cities, to other enactments of the legislature applicable uniformly to all cities, to enactments of the legislature applicable uniformly to all cities of the same class limiting or prohibiting the levying of any tax, excise, fee, charge or other exaction and to enactments of the legislature prescribing limits of indebtedness. All enactments relating to cities now in effect or hereafter enacted and as later amended and until repealed shall govern cities except as cities shall exempt themselves by charter ordinances as herein provided for in subsection (c).

(c)

    (1) Any city may by charter ordinance elect in the manner prescribed in this section that the whole or any part of any enactment of the legislature applying to such city, other than enactments of statewide concern applicable uniformly to all cities, other enactments applicable uniformly to all cities, and enactments prescribing limits of indebtedness, shall not apply to such city.

    (2) A charter ordinance is an ordinance which exempts a city from the whole or any part of any enactment of the legislature as referred to in this section and which may provide substitute and additional provisions on the same subject. Such charter ordinance shall be so titled, shall designate specifically the enactment of the legislature or part thereof made inapplicable to such city by the adoption of such ordinance and contain the substitute and additional provisions, if any, and shall require a two-thirds vote of the members-elect of the governing body of such city. Every charter ordinance shall be published once each week for two consecutive weeks in the official city newspaper or, if there is none, in a newspaper of general circulation in the city.

(3) No charter ordinance shall take effect until sixty days after its final publication. If within sixty days of its final publication a petition signed by a number of electors of the city equal to not less than ten percent of the number of electors who voted at the last preceding regular city election shall be filed in the office of the clerk of such city demanding that such ordinance be submitted to a vote of the electors, it shall not take effect until submitted to a referendum and approved by a majority of the electors voting thereon. An election, if called, shall be called within thirty days and held within ninety days after the filing of the petition. The governing body shall pass an ordinance calling the election and fixing the date, which ordinance shall be published once each week for three consecutive weeks in the official city newspaper or, if there be none, in a newspaper of general circulation in the city, and the election shall be conducted as elections for officers and by the officers handling such elections. The proposition shall be: 'Shall charter ordinance No. _____, entitled (title of ordinance) take effect?' The governing body may submit any charter ordinance to a referendum without petition by the same publication of the charter ordinance and the same publication of the ordinance calling the election as for ordinances upon petition and such charter ordinance shall then become effective when approved by a majority of the electors voting thereon. Each charter ordinance becoming effective shall be recorded by the clerk in a book maintained for that purpose with a statement of the manner of adoption and a certified copy shall be filed with the secretary of state, who shall keep an index of the same.

(4) Each charter ordinance enacted shall control and prevail over any prior or subsequent act of the governing body of the city and may be repealed or amended only by charter ordinance or by enactments of the legislature applicable to all cities.

(d) Powers and authority granted cities pursuant to this section shall be liberally construed for the purpose of giving to cities the largest measure of self-government." Kan. Const. art. 12, § 5(b)-(d).

In other words, cities possess the authority to adopt ordinances of any type on subjects not addressed by the legislature. Kan. Const. art. 12, § 5(b); *Kansas City Renaissance Festival Corp.*, 269 Kan. at 673.

If the legislature has spoken through a statute with statewide effect, a city that wishes to opt out of the enactment may employ a charter ordinance, which is subject to more rigorous notice requirements and public challenge not applicable to ordinary ordinances. Kan. Const. art. 12, § 5(b), (c); *Kansas City Renaissance*

*Festival Corp.*, 269 Kan. at 673. Subsection 5(c) sets out the procedures to be followed when adopting a charter ordinance. Kan. Const. art. 12, § 5(c)(1)-(4).

However, the Home Rule Amendment prohibits a city from using either an ordinary or a charter ordinance to opt out of or exempt itself from any of four at least potentially overlapping types of state statutes: (1) enactments of statewide concern uniformly applicable to all cities; (2) other enactments uniformly applicable to all cities; (3) enactments uniformly applicable to all cities of the same class that prohibit or limit "the levying of any tax, excise, fee, charge or other exaction"; and (4) enactments prescribing limits of indebtedness. Kan. Const. art. 12, § 5(b); see *Claflin v. Walsh*, 212 Kan. 1, 6-7, 509 P.2d 1130 (1973).

The same year the Home Rule Amendment took effect, 1961, the legislature enacted the original version of K.S.A. 12-137, L. 1961, ch. 78, sec. 1, which was amended in 1977, L. 1977, ch. 56, sec. 1, to read:

"Where, under the power of cities granted by paragraph (b) of section 5 of article 12 of the constitution of Kansas, the governing body of any city by ordinance proposes to levy for revenue purposes any tax, excise, fee, charge or other exaction other than permit fees or license fees for regulatory purposes, which is not limited or prohibited or a procedure for the levy of which is not otherwise prescribed by enactment of the legislature as provided by said paragraph (b), such ordinance shall require a two-thirds (⅔) vote of the members-elect of the governing body and shall be published once each week for two (2) consecutive weeks in the official city newspaper.

"No such ordinance shall take effect until sixty (60) days after its final publication, and if within sixty (60) days of its final publication a petition signed by a number of electors of the city equal to not less than ten percent (10%) of the number of electors who voted at the last preceding regular city election shall be filed with the county election officer of the county in which such city is entirely or primarily located demanding that such ordinance be submitted to a vote of the electors, it shall not take effect until submitted to a referendum and approved by a majority of the electors voting thereon. The governing body of any city may submit any ordinance providing for such levy to a referendum without petition. Ordinances authorizing such levies submitted to referendum without petition may be passed by a majority vote of the governing body and shall be published once in the official city newspaper." K.S.A. 12-137.

The statute from which the City sought to exempt itself in this case, K.S.A. 12-4112, is a part of the Kansas Code of Procedure

for Municipal Courts (KCPMC), currently K.S.A. 12-4101 through 4602. The KCPMC was originally enacted in 1973 and governs "the practice and procedure of all cases in municipal courts." K.S.A. 12-4102. K.S.A. 12-4112 has been amended three times since 1973. It now states:

"No person shall be assessed costs for the administration of justice in any municipal court case, except for witness fees and mileage as set forth in K.S.A. 12-4411, and amendments thereto; for the assessment required by K.S.A. 2001 Supp. 20-1a11, and amendments thereto; for the judicial branch education fund; for the assessment required by K.S.A. 12-4117 and amendments thereto for the law enforcement training center fund established pursuant to K.S.A. 74-5619 and amendments thereto, the local law enforcement training reimbursement fund established pursuant to K.S.A. 74-5620, and amendments thereto, and the juvenile detention facilities fund as provided in K.S.A. 12-4117, and amendments thereto; and for the assessment required by K.S.A. 12-16,119, and amendments thereto, for the detention facility processing fee." K.S.A. 12-4112.

On January 9, 1990, the City of Wichita passed Charter Ordinance 122. It provided in pertinent part:

"The City of Wichita, Kansas, a Council-Manager City of the first class, by the power vested in it by Article 12, Section 5, of the Constitution of the State of Kansas, hereby elects to exempt itself from, and makes inapplicable to it the provisions of K.S.A. 12-4112; 12-4203; 12-4410; 12-4411; and 1988 Supp. 12-4212; 12-4213, 12-4305; and 12-4516; and amendments thereto, and provide substitute and additional provisions as hereinafter set forth in this ordinance."

By this ordinance, the City elected to exempt itself from certain provisions of the KCPMC, including K.S.A. 12-4112. It also noted that the "referenced provisions are either enactments or a part thereof which are applicable to this city, but are not applicable uniformly to all cities." Wichita Ch. Ord. 122.

Charter Ordinance 122 also explicitly authorized the City to assess costs against an accused for the administration of justice in a municipal court case when: (1) the accused is found guilty; (2) the accused pleads guilty; or (3) the accused has failed to comply with a traffic citation. The ordinance did not set out specific costs to be reimbursed for different types of cases; rather, it stated that costs would "be assessed . . . for the administration of justice . . . in accordance with the terms contained in Section 1.04.070 of the Code of the City of Wichita, Kansas, and amendments thereto."

There is no dispute that Charter Ordinance 122, creating City Code § 1.04.070, was passed in compliance with Kan. Const. art. 12, § 5(c). Not less than two-thirds of the members-elect of the City's governing body voted in favor of it. It was published in the "Derby Daily Reporter" for 2 consecutive weeks. No petition for referendum was filed regarding it, and it took effect 61 days after its final publication.

The City adopted an ordinary ordinance, No. 40-846, on February 6, 1990. The ordinance amended City Code § 1.04.070 and provided specifics not included in Charter Ordinance 122, setting out a schedule of specific court cost amounts tied to specific offenses and witness fees. This code section was updated and amended three times before August 1997. There is no dispute that adoption of Ordinance No. 40-486 followed ordinary rather than charter ordinance procedures.

On August 26, 1997, the City passed Ordinance No. 43-563, which again amended City Code § 1.04.070. This amendment of the Code provision resulted in the schedule of costs under which representative plaintiff Farha was assessed. Again, there is no dispute that Ordinance No. 43-563 was an ordinary rather than a charter ordinance.

The City considers all money collected as municipal court costs to be "revenue." This revenue contributes to covering, but does not fully cover, the expense of operating the municipal court system in Wichita.

This court discussed the Home Rule Amendment in *Kansas City Renaissance Festival Corp. v. City of Bonner Springs*, 269 Kan. 670, 673, 8 P.3d 701 (2000), and *State ex rel. Kline v. Board of Comm'rs of Unified Gov't of Wyandotte Co./KC*, 277 Kan. 516, 524-25, 85 P.3d 1237 (2004). Under the amendment,

"[t]he legislature retains power over statewide matters. Hence, home rule power does not authorize cities to act where the state legislature has precluded municipal action by clearly preempting the field with a uniformly applicable enactment. Generally speaking, where the legislature has not preempted the field with a uniformly applicable enactment, cities may exercise their home rule power by one of two means. Where there is a nonuniform legislative enactment that is in conflict with the action a city wants to take, a charter ordinance may be used to exempt the city from the legislative enactment. Kan. Const. art. 12, § 5(c). Where there

is no legislative enactment in conflict with the local action, an ordinary ordinance will suffice." *Kansas City Renaissance Festival Corp.*, 269 Kan. at 673 (citing Kan. Const. art. 12, § 5[b]).

"Cities' empowerment under the Home Rule Amendment is much broader than cities simply exempting themselves from certain legislation. Under the [A]mendment, the legislature retained for itself only the power to govern incorporation of cities and the methods by which city boundaries may be altered, cities may be merged or consolidated, and cities may be dissolved. Kan. Const. art. 12, § 5(a). The legislature did not retain for itself the power to govern private conduct. Cities were empowered to determine local affairs, with only the specific exceptions identified in subsection 5(a), and local government including the levying of taxes, excises, fees, charges and other exactions, by means of ordinary and charter ordinances, except where the legislature has preempted a field by enacting legislation uniformly applicable to all cities." *Kline*, 277 Kan. at 524-25.

Thus, analysis of a city home rule case requires us to ask first whether the legislature has spoken. If it has not, then a city is empowered to determine its own affairs, subject only to statutory limitations not found in the Home Rule Amendment.

If the legislature has spoken on a topic, as it has here regarding municipal court costs, we must move to a second question: Does any of the four circumstances in which an opt-out is prohibited by Article 12, Subsection 5(b), exist? In this case, the plaintiff class appears to believe that an opt-out was prohibited because K.S.A. 12-4112 fits one of the first three exceptions to home rule authority described in the constitutional provision, *i.e.*, that either (1) it is an enactment of statewide concern uniformly applicable to all cities, or (2) it is another enactment uniformly applicable to all cities, or (3) it is an enactment uniformly applicable to all cities of the same class that prohibits or limits "the levying of any tax, excise, fee, charge or other exaction." Kan. Const. art. 12, § 5(b). Because the parties do not contend that the fourth and last exception dealing with limits of indebtedness applies, we do not discuss it.

The legislature may include preemptive language in a statute to express its intent that the statute be applied uniformly to all cities. *Claflin*, 212 Kan. at 8. However, since the adoption of the Home Rule Amendment, it is not the legislature's explicit language that controls; rather, home rule authority preemption is governed by whether the constitutional requirement of uniformity is, in fact, met. *State ex rel. Kline*, 277 Kan. at 533.

For purposes of determining uniformity under the first three of four constitutional exceptions under the Home Rule Amendment, we examine not only the individual state statute at issue. We look at whether the entire enactment of which the statute is a part is uniformly applicable. If not, the Home Rule Amendment allows a city to opt out of the statute. See *Kline*, 277 Kan. 516, 521; *City of Wichita v. Kansas Taxpayers Network, Inc.*, 255 Kan. 534, 874 P.2d 667 (1994); *City of Junction City v. Griffin*, 227 Kan. 332, 607 P.2d 459 (1980); *Claflin*, 212 Kan. at 7-8. This message from our previous cases is clear.

The statute at issue in *Claflin*, K.S.A. 73-407, provided for a board of trustees appointed by county commissioners to manage and control memorial buildings. The City of Kansas City adopted a charter ordinance to opt out of K.S.A. 73-407, transferring management of a particular memorial building from the board of trustees to its own City Commission. *Claflin*, 212 Kan. at 3-4.

We held that the key to whether Kansas City had acted beyond its home rule authority was whether the enactment of which K.S.A. 73-407 was a part—a group of statutes concerning memorials, monuments, and grave markers, K.S.A. 73-401 *et seq.*,—was applicable uniformly to all cities. *Claflin*, 212 Kan. at 6. We located guidance for determining uniformity in the Home Rule Amendment itself and in a fundamental axiom of statutory construction:

"In view of the liberal construction provision of [Kan. Const. art. 12, § 5(d)], in determining whether a legislative enactment is applicable uniformly to all cities such a legislative intent should be clearly evident before the courts should deny a city the right to exercise home rule power in that area. . . . [R]ules of construction require us to consider all statutes relating to the same subject together in determining legislative intent." *Claflin*, 212 Kan. at 7-8.

In *Claflin*, the enactment was not uniformly applicable to all cities because, among other things, it permitted three variations in fundraising method, the variations dependent on the size of the city involved. *Claflin*, 212 Kan. at 9 (relying on K.S.A. 73-407, 73-422, 73-423, 73-433, 73-444). Without uniformity in application of the entire enactment, the City had the right to make the change in management for the particular memorial building at issue through charter ordinance. *Claflin*, 212 Kan. at 9-10.

In *City of Wichita*, 255 Kan. 534, the City had exempted itself by charter ordinance from the provisions of the Kansas Water Pollution Act, K.S.A. 12-3101 *et seq.*, (KWPA). Then, by ordinary ordinance, the City established a storm water utility system and set out sewer service charges. Defendant taxpayers attempted to challenge the charter and ordinary ordinances. The district court held that the charter ordinance was a proper exercise of home rule authority, and that the ordinary ordinance setting charges was administrative in nature and thus not subject to attack through initiative referendum. *City of Wichita*, 255 Kan. at 535.

On appeal, the taxpayers contended that the City of Wichita had exceeded its home rule powers by attempting to charter out of the KWPA because: (1) The KWPA was uniformly applicable to all cities; (2) the challenged ordinance contained a fee and the enactment applied uniformly to all cities of the same class; and (3) the Home Rule Amendment limited the City's authority to opt out of or modify provisions prescribing limits of indebtedness, regardless of uniformity. *City of Wichita*, 255 Kan. at 537-38.

We held that the KWPA was not uniformly applicable to all cities, or to all cities of the same class, because one of its provisions applied only to certain cities of the first class that owned certain facilities. In addition, the KWPA

"did not really limit or prohibit the levying of any tax or fee. Rather it extend[ed] some additional authority to the cities to which it applies—it allow[ed] them to bill and collect sewer service charges through the board of public utilities and authorizes the board to discontinue service to nonpaying customers." *City of Wichita*, 255 Kan. at 538.

Moreover, the KWPA specifically provided that no bonds issued under it would constitute "indebtedness." The City thus had not exceeded its home rule authority. *City of Wichita*, 255 Kan. at 538.

In *Kline*, 277 Kan. 516, the State filed a petition for quo warranto and declaratory judgment, seeking invalidation of charter ordinances adopted by two cities to opt out of a section of the Liquor Control Act that banned Sunday retail liquor sales. The State appealed the district court's conclusion that the cities had constitutional authority to adopt the ordinances exempting the cities from the ban. *Kline*, 277 Kan. at 517.

This court held that the charter ordinances were valid exercises of the home rule authority granted to cities under the Kansas Constitution. Although the legislature could entirely preempt local liquor regulation and control if it made the Act uniformly applicable to all cities, it had not done so. The Act contained at least three different provisions that distinguished among various characteristics of cities; and subsequent amendments to the Act had not cured this nonuniformity. *Kline*, 277 Kan. 525-26, 534-35 (relying on *Claflin*, 212 Kan. 1; *City of Junction City v. Griffin*, 227 Kan. 332, 607 P.2d 459 [1980]; disapproving *Blue Star Supper Club, Inc. v. City of Wichita*, 208 Kan. 731, 495 P.2d 524 [1972]; *Bigs v. City of Wichita*, 271 Kan. 455, 464, 23 P.3d 855 [2001]).

Most specific to this case, we previously addressed the question of whether the KCPMC, the enactment of which K.S.A. 12-4112 is a part, is uniform.

In *City of Junction City v. Griffin*, 227 Kan. 332, 607 P.2d 459 (1980), the defendant was convicted and sentenced to a mandatory 30 days in jail, pursuant to a Junction City ordinance prohibiting solicitation for prostitution. The ordinance was at odds with a section of the KCPMC, K.S.A. 12-4511. *City of Junction City*, 227 Kan. at 332.

This court originally held for the defendant, concluding that the KCPMC was uniformly applicable to all cities. Thus Junction City could not opt out of K.S.A. 12-4511, the KCPMC provision on penalties. *City of Junction City v. Griffin*, 226 Kan. 516, 518, 601 P.2d 684 (1979) (opinion later withdrawn).

On rehearing, however, we determined that the KCPMC was "not applicable uniformly to all cities by reason of [the fact that one provision requires] municipal judges in first-class cities to be attorneys, while permitting second[-] and third-class cities to have lay judges." *Junction City*, 227 Kan. at 337 (relying on K.S.A. 12-4105). Furthermore, the nonuniform portion of the Act could not be judicially excised or ignored; it was "clearly one of the sections comp[osing] the enactment. The division into chapter, article and sections in the Kansas Statutes Annotated does not have the effect of making separate enactments of a single bill passed by the legislature of the State of Kansas." *City of Junction City*, 227 Kan. at

335-36. We therefore upheld the charter ordinance adopted by Junction City. Its prohibition on solicitation for prostitution and prescription of a mandatory jail sentence for conviction were valid substitute and additional provisions under home rule. *City of Junction City*, 227 Kan. at 337.

*City of Junction City* and the reasoning of our other previous cases control here. K.S.A. 12-4112 is part of the KCPMC, which is not applicable uniformly to all cities. This means that neither the first exception nor the second exception to home rule authority applies. See Kan. Const. art. 12, § 5(b). The enactment at issue is neither one of statewide concern applicable to all cities nor another enactment uniformly applicable to all cities. See *City of Junction City*, 227 Kan. at 335-36; Att'y Gen. Op. Nos. 98-3, 82-161.

The plaintiff class is undeterred, however, arguing that K.S.A. 12-4112's subject matter of court costs should alter our uniformity analysis and should dictate application of the third exception to home rule authority, *i.e.*, the exception for enactments uniformly applicable to all cities of the same class that prohibit or limit "the levying of any tax, excise, fee, charge or other exaction." Kan. Const. art. 12, § 5(b).

We are unpersuaded. Neither the wording of the Home Rule Amendment nor our previous cases gives us a reason to depart from at least part of our usual approach to uniformity. The first reference point for determining whether an enactment is uniformly applied remains the entire enactment, not the specific statutory section from which a City has attempted to exempt itself. See Kan. Const. art. 12, § 5(b), (c); *Kline*, 277 Kan. at 520-21; *Kansas City Renaissance Festival Corp.*, 269 Kan. at 679; *City of Wichita*, 255 Kan. at 537; *Claflin v. Walsh*, 212 Kan. 1, 7-8, 509 P.2d 1130 (1973). We acknowledge that the plaintiff class is correct regarding the second reference point for uniformity analysis under the third exception to home rule authority. If that exception were potentially applicable here, we would be required to look not at whether the entire enactment is uniformly applied to all cities but to all cities of the same class. See Kan. Const. art. 12, § 5(b). This look is not necessary here. The enactment—the KCPMC, not K.S.A. 12-4112 alone—must be viewed as a whole. Its purpose is obviously far

broader than the prohibition or limitation of "the levying of any tax, excise, fee, charge or other exaction." Kan. Const. art. 12, § 5(b); see also *City of Junction City*, 227 Kan. at 337; *Kline*, 277 Kan. 516 (Liquor Control Act, K.S.A. 41-101 *et seq.*, not uniformly applicable; opt-out of statutory prohibition on Sunday liquor sales permissible); compare *City of Wichita*, 255 Kan. at 538 (KWPA scope broader than levying of tax, fee); *Home Builders Ass'n of Greater Kansas City v. City of Overland Park*, 22 Kan. App. 2d 649, 663-64, 921 P.2d 234 (1996) (Local Retailers' Sales Tax Act—which governs procedure for imposing sales tax, use of revenue from tax—subject to analysis under third exception to home rule authority; opt-out permitted because Act nonuniform as to cities of same class).

In sum, Wichita was not prevented from exercising its home rule authority to charter out of K.S.A. 12-4112.

### *Is Charter Ordinance 122 Invalid for Failure to Contain Substitute and Additional Provisions?*

Charter Ordinance 122 did not set out a specific municipal court cost schedule, but it expressly exempted the City from K.S.A. 12-4112 and authorized costs to be assessed in municipal courts "in accordance with the terms contained in Section 1.04.070 of the Code of the City of Wichita, Kansas, and amendments thereto." The plaintiff class argues that placement of "substitute and additional provisions" required by the Home Rule Amendment in § 1.04.070 by means of ordinary ordinance rather than charter ordinance invalidates the City's exercise of any home rule power to set municipal court costs. The district court held that the plain language of the Home Rule Amendment permitted but did not require a city's charter ordinance to contain substitute and additional provisions.

Subsection (c)(2) of the Home Rule Amendment is not a model of clarity on this point. It says both that "[a] charter ordinance . . . *may* provide substitute and additional provisions" on the subject of the statute from which it exempts the city and that such a "charter ordinance . . . *shall* designate specifically the enactment of the legislature . . . made inapplicable . . . and con-

tain the substitute and additional provisions, *if any* . . . ." (Emphasis added.) "May" typically communicates permission; "shall" typically communicates direction or command; we understand that use of "may" plus "shall" plus "if any" leaves the import of the provision open to dispute.

Although we regard the district court's interpretation as one reasonable resolution, we need not endorse or reject it on the facts before us. To the extent subsection (c)(2) required then-existing substitute and additional provisions replacing K.S.A. 12-4112 to be included in the language of Charter Ordinance 122, they were. The charter ordinance cited the specific legislative provision from which the City would be exempt, conveyed that a locally generated and regulated system of municipal court costs would be imposed in place of the legislative provision, and told any interested party exactly where further particulars could be found. Any citizen wishing to challenge the plan to assess municipal court costs under this exercise of home rule authority was, as a result, fully armed with the information necessary to do battle.

### Did Subsequent Amendments to K.S.A. 12-4112 Repeal the Charter Ordinance?

The plaintiff class next suggests that legislative amendments to K.S.A. 12-4112, made after the passage of Charter Ordinance 122, implicitly repealed the charter ordinance. As mentioned, the KC-PMC was enacted in 1973. The particular section at issue, K.S.A. 12-4112, was amended in 1989, 1992, and 1998, each time to add references to exceptions to its prohibition of municipal court costs. See L. 1973, ch. 61, sec. 12-4112 (exception for witness mileage as provided in K.S.A. 12-4411); L. 1989, ch. 66, sec. 5 (exception for judicial education fund); L. 1992, ch. 315, sec. 4 (exception for law enforcement training center fund, local law enforcement training reimbursement fund, juvenile detention facilities fund); L. 1998, ch. 155, sec. 2 (exception for detention facility processing fee).

This argument from the plaintiff class is without merit. Charter Ordinance 122 explicitly contemplated amendments to the KC-PMC when it exempted the City from K.S.A. 12-4112; the exemp-

tion covered, *inter alia*, K.S.A. 12-4112 "and amendments thereto."

Moreover, the district court concluded that none of the statutory amendments eliminated the nonuniform provisions of the KCPMC, possibly giving rise to an exception to home rule authority. We agree and note that Subsection (c)(4) of the Home Rule Amendment specifically states that a charter ordinance "may be repealed or amended only by charter ordinance or by enactments of the legislature applicable to all cities." Kan. Const. art. 12, § 5 (c)(4). Again, the enactment with which we are concerned is the KCPMC; the legislature has not made KCPMC uniformly applicable. Compare *Bigs,* 271 Kan. at 460 (otherwise disapproved by *State ex rel. Kline v. Board of Comm'rs of Unified Gov't of Wyandotte Co./KC,* 277 Kan. 516, 85 P.3d 1237 (2004) (legislative amendment of statute at issue operated to repeal charter ordinance where amendment eliminated nonuniform provisions); see also *Kansas City Renaissance Festival Corp. v. City of Bonner Springs,* 269 Kan. 670, 680, 8 P.3d 701 (2000) (noting legislature amended Local Retailers' Sales Tax Act uniformly applicable after Court of Appeals decision in *Home Builders,* 22 Kan. App. 2d 649). We recognized in *Kline,* that "[s]ince the adoption of Article 12, § 5 of the Kansas Constitution, the State can preempt a city's authority only by making the provisions of [an act] uniformly applicable to all cities." *Kline,* 277 Kan. at 535. "If the legislature intends to preempt a field and exempt it from home rule . . . it has only to make such an enactment uniformly applicable." *Kline,* 277 Kan. at 526.

We also note that our conclusion on this issue is supported by common sense. If a city's charter ordinance is automatically invalidated by any amendment to the statute it opts out of or to the enactment of which that statute is a part, the result would be unworkable. It would also strip the Home Rule Amendment of much of its force and effect. As *amicus* League of Kansas Municipalities tells us, as long ago as 1994, approximately 450 cities had adopted more than 3,000 charter ordinances exempting themselves from more than 200 state statutes. Legislative amendments can occur multiple times each session, and, under the rule for which the

plaintiff class advocates, each would carry the potential to invalidate such charter ordinances. This system would run completely counter to the Home Rule Amendment and the fundamental concept of modern local government it embodies. " 'No longer are cities dependent upon the state legislature for their authority to determine their local affairs and government. Since home rule, cities have power granted directly from the people through the constitution without statutory authorization.' " *Kline*, 277 Kan. at 532 (citing *Claflin*, 212 Kan. at 6).

### *Did K.S.A. 12-137 Control the Adoption of a Municipal Court Costs Ordinance?*

The plaintiff class' last argument is statutory rather than constitutional. It argues that the procedure followed by the City was inadequate under K.S.A. 12-137, which provides for charter ordinance-like safeguards when a city adopts an ordinary ordinance under Subsection (b) of the Home Rule Amendment, proposing "to levy for revenue purposes any tax, excise, fee, charge or other exaction other than permit fees or license fees for regulatory purposes." K.S.A. 12-137.

The parties discuss at some length whether a "municipal court cost" is properly considered a "tax." They also focus on cases distinguishing a "tax" from a "fee." See *Executive Aircraft Consulting, Inc. v. City of Newton*, 252 Kan. 421, 426-28, 845 P.2d 57 (1993); *Cook v. City of Enterprise*, 233 Kan. 1039, 1042, 666 P.2d 1197 (1983); *Home Builders*, 22 Kan. App. 2d at 670-71. This distinction is of no moment here. At a minimum, a municipal court cost qualifies as a "charge or other exaction," each of which appears in the list in K.S.A. 12-137. In addition, the City concedes that the court costs it collects are regarded and treated as "revenue."

We are nevertheless unconvinced that K.S.A. 12-137 applies here. Rather, it applies only when a charter ordinance is not required, *i.e.*, only when the legislature has not spoken on a given subject, and a city draws both its home rule power and its procedure from the opening line of subsection (b) rather than subsection (c) of Article 12, § 5. K.S.A. 12-137 applies to give the citizenry additional notice and ability to challenge any revenue-generating

ordinary ordinances. It does this by subjecting such ordinary ordinances to the same supermajority, double-publication, and petition-for-referendum procedures as required when a City exempts itself from state legislation through charter.

In this case, the City properly employed a charter ordinance to exercise its home rule authority to opt out of a state statute. It had the constitutional right to reject state regulation in favor of local control. It was not required to duplicate its charter ordinance effort when it adopted an ordinary ordinance to provide further particulars on the court costs previously authorized by charter. The legislature had spoken. The City made a different choice. Those who could be assessed municipal court costs got all of the procedural protections to which they were entitled.

Finally, we note that our decision in this case has the added advantage of advancing the policy of liberal construction of home rule explicitly set forth in our state constitution. "Powers and authority granted cities" under Article 12, § 5, are to be "construed for the purpose of giving to cities the largest measure of self-government."

Affirmed.